Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiff
BETTY'S BEST, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY'S BEST, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>THE FACEBOOK ADVERTISERS LISTED ON SCHEDULE A,<br>                    Defendants. | CASE NO.: 3:23-cv-04716<br><br>**COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT**<br>**(1) TRADEMARK COUNTERFEITING AND INFRINGEMENT, 15 U.S.C. § 1114;**<br>**(2) FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a);**<br>**(3) COMMON LAW TRADEMARK INFRINGEMENT;**<br>**(4) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200**<br>**(5) COPYRIGHT INFRINGEMENT, 17 U.S.C. § 501;**<br>**(6) PATENT INFRINGEMENT, 35 U.S.C. § 271**<br><br>**(INJUNCTIVE RELIEF DEMANDED)** |

Plaintiff BETTY'S BEST, INC. ("Betty's Best") by and through its undersigned counsel, hereby brings this Complaint against Defendants FACEBOOK ADVERTISERS LISTED ON SCHEDULE A for damages and injunctive relief (collectively "Facebook Advertisers" or "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district, and who are advertising, selling, offering for sale and distributing goods using counterfeits and

confusingly similar imitations of Plaintiff's intellectual property within this district the on the Facebook platform that Meta Platforms, Inc. ("Meta") operates in this district, and in support thereof states as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff  Betty's Best brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and California's statutory and common law.

2.      Plaintiff Betty's Best brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*, and The All Writs Act, 28 U.S.C. § 1651(a).

3.      Plaintiff  Betty's Best brings this action for willful design patent infringement under 35 U.S.C. §271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented design, within the United States or for importation into the United States any patented design during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, 285, and 289.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5.      This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 301.

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

7.      Defendants are subject to personal jurisdiction in California and jurisdiction is proper in this district court.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

8. Jurisdiction is proper in California because defendants are transacting business within California by using the Facebook platform that Meta operates from within California to (a) commit acts of infringement, and (b) profit from acts of infringement.

9. Jurisdiction is proper in California because defendants committed tortious acts within California by using the Facebook platform that Meta operates from within California to (a) commit acts of infringement, and (b) profit from acts of infringement.

10. Jurisdiction is proper in California because defendants caused Plaintiff to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that the defendants' committed outside the state consisted of by using the Facebook platform that Meta operates from within California to (a) commit acts of infringement, and (b) profit from acts of infringement. All these acts caused Plaintiff to suffer tortious injury in California.

11. Defendants have sufficient minimum contacts with the state of California, there is a direct connection between the defendants' tortious acts and the state of California, and the exercise of personal jurisdiction over the defendants complies with the Due Process Clause of the United States Constitution.

12. Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

13. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, defendants engaged in infringement in this district, defendant are subject to personal jurisdiction in this district, and because defendants consented to this venue when defendants provided the counternotification(s) referred to herein because the service provider provided with the counternotification(s) can be found in this judicial district.

## **PLAINTIFF**

14. Betty's Best is a California Corporation with its principal place of business in Santa Ynez, California.

15.     Betty's Best is the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs.

16.     Betty's Best's products are sold through hundreds of authorized retailers in the United States and many countries like United Kingdom and Australia, listed on the StripHair.com Store Locator Map at https://striphair.com/pages/retail-store-locator, its own website https://striphair.com/collections/all-products, Amazon.com, and other authorized retailers.

17.     Betty's Best owns the trademarks, copyrights, and design patent described below that are the subject of this action in United States; as well registrations claiming protection for the product StripHair Gentle Groomer's design features in European Union and Australia, following the scope of its commercial activities extended outside the United States.

18.     Plaintiff offers for sale and sells its products within the state of California, including this district, and throughout the United States.

19.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

20.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

21.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

22.     The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brands.

///

///

///

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

23.     Plaintiff created and sells unique patented grooming tools under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER (collectively the "Betty's Best Marks"), including the first multi-purpose grooming tool of its kind, known as the "6-in-1 Shedding Grooming Massage brush" for horses and pets that can be used in six ways to shed, groom, shine, shampoo, scrape and massage. The StripHair Gentle Groomer is ideal for short-haired animals because it will not harm the skin, but it will also shed out a thick hairy coat in the spring-time molting season while providing a therapeutic massage and adding shine to the coat. It's safe to use everywhere, even the face and legs. The material used to make the StripHair Gentle Groomer is perfectly balanced to achieve outstanding durability, flexibility, cleanliness, sun protection, and just the perfect amount of grip.

24.     Plaintiff is the owner of all rights in and to the Betty's Best Marks STRIPHAIR and THE GENTLE GROOMER (Standard Characters) for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21 shown in the table below.

| Mark | Reg. No. | IC | First Use | First Use in Commerce | Reg. Date | Exhibit |
|---|---|---|---|---|---|---|
| STRIPHAIR | 5072866 | 21 | 10/01/2014 | 12/16/2014 | 11/01/2016 | 1A |
| THE GENTLE GROOMER | 5328641 | 21 | 2015 | 2015 | 11/07/2017 | 1B |

25.     The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1.

26.     The STRIPHAIR Mark is incontestable.

27.     The Betty's Best Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique patented grooming tools.

28.     The Betty's Best Marks are displayed directly on top of Plaintiff's products and on different sides of the packaging used for selling the products. Shown below are the Betty's Best Marks as they are used in relation with Plaintiff's products and its packaging.




29.     The Betty's Best Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality and unique patented grooming tools for an extended period of time.

30.     The Betty's Best Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

31.     The Betty's Best Marks have never been assigned or licensed to any of the Defendants.

32.     The Betty's Best Marks are a symbols of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

33.     Plaintiff has carefully monitored and policed the use of the Betty's Best Marks.

34.     The Betty's Best Marks are well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and have been for many years.

35.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Betty's Best Marks in connection with Betty's Best's products. Betty's Best's average marketing and promotional investments are over $225,000 per year.

36.     Plaintiff has extensively used, advertised, and promoted the Betty's Best Marks in the United States in association with the sale of high-quality and unique patented grooming tools.

37.     Plaintiff has spent substantial resources promoting the Betty's Best Marks and grooming tools bearing or sold under those marks.

38.     Sales of products bearing or sold under the Betty's Best Marks generated $1.6M (USD) in 2021.

39.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the Betty's Best Marks as being high-quality and unique patented grooming tools sponsored and approved by Plaintiff.

40.     Accordingly, the Betty's Best Marks have achieved secondary meaning as identifiers of high-quality and unique patented grooming tools.

41.     Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

42.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

43.     Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

44.     Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the Betty's Best Marks.

45.     Plaintiff advertises, markets, promotes, and sells its products under Betty's Best Marks using photographs, videos, and through a website that are protected by copyright and registered with the Copyright Office (collectively the "Works").

46.     Plaintiff's photographs are duly registered with the Register of Copyrights as visual materials as shown in the table below. True and correct copies of the Certificates of Registration and the photographs they apply to are attached hereto as Composite Exhibit 2.

| Copyright Title and Description | Reg. No. | Reg. Date | Exhibit |
|---|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 | 2A |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 | 2B |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 | 2C |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 | 2D |

47.     Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures as shown in the table below. True and correct copies of the Certificates of Registration are attached hereto as Composite Exhibit 3.

| Copyright Title and Description | Reg. No. | Reg. Date | Exhibit |
|---|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 | 3A |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 | 3B |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 | 3C |
| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 | 3D |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 | 3E |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 | 3F |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 | 3G |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 | 3H |

48.     Plaintiff's website content comprising photographs and text, titled "striphair.com website" is duly registered with the Register of Copyrights under the Registration No. VA 2-271-013, effective October 6, 2021. A true and correct copy of the Certificate of Registration and the content it applies to is attached hereto as Exhibit 4.

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

49. The copyrighted photographs, videos, and the website content claimed as copyrightable subject matter show Plaintiff's high-quality and unique patented grooming tools' design features, its packaging, and its use on horses and pets from different perspectives.

50. Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Plaintiff and its authorized distributors using Plaintiff's copyrighted photographs, videos, and through its website content.

51. Plaintiff has never granted authorization to anyone to advertise, market, or promote unauthorized goods using Plaintiff's copyrighted photographs, videos, or website content.

52. Plaintiff's grooming tools' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under U.S. Patent No. D841,900 S titled "HORSE OR PET GROOMING TOOL". A true and correct copy of U.S. Design Patent Registration is attached hereto as Exhibit 5 (the "HOPGT Design Patent").

53. The HOPGT Design Patent relates to the ornamental design for a horse or pet grooming tool as shown and described through four figures corresponding and ordering in front, top, bottom and side views, in which the rear view of the design is identical to the front view and both side views are identical each other.

54. The HOPGT Design Patent was registered on February 26, 2019, has not expired, and is valid.

55. Plaintiff marked its products with a Patent Notice.

56. Plaintiff has never granted authorization to anyone to import, make, use, or sell unauthorized goods using the HOPGT Design Patent.

## META PLATFORMS, INC. AND FACEBOOK

57. Meta operates the social media network website Facebook. Facebook earns revenue from advertising. Facebook sells, publishes and displays millions of ads each day.

58. An internal Facebook report from November 2018 identified that 40 percent of its pages traffic directed users to pages that stole or recycled most of their content including for the sale of counterfeit products. See Keith Hagey, Facebook Allows Stolen Content to Flourish, Its Researchers Warned, THE WALL STREET JOURNAL (Nov. 9, 2018, 4:43 PM ET),

9

1   https://www.wsj.com/articles/facebook-stolen-content-copyright-infringement-facebook-files-

2   11636493887. In March of 2023, the Federal Trade Commission issued orders to eight social media

3   and video streaming platforms including Facebook seeking information on how these companies

4   scrutinize and restrict paid commercial advertising that is deceptive or exposes consumers to

5   fraudulent products and counterfeit and fake goods. *See* FTC Issues Orders to Social Media and

6   Video Streaming Platforms Regarding Efforts to Address Surge in Advertising for Fraudulent

7   Products and Scams | Federal Trade Commission. https://www.ftc.gov/news-events/news/press-

8   releases/2023/03/ftc-issues-orders-social-media-video-streaming-platforms-regarding-efforts-

9   address-surge-advertising.

## DEFENDANTS

11       59.      Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure

12   17(b).

13       60.      Defendants are individuals and/or business entities of unknown makeup, each of

14   whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute

15   products from the same or similar sources in those locations, and/or ship their goods from the same

16   or similar sources in those locations to shipping and fulfillment centers within the United States to

17   redistribute their products from those locations.

18       61.      Defendants target their business activities toward consumers throughout the United

19   States, including within this district, through the simultaneous operation of commercial Internet

20   based e-commerce stores via the Internet.

21       62.      Defendants are Facebook Advertisers who use Facebook to display, publish,

22   communicate advertising using Plaintiff's intellectual property to direct Facebook users to purchase

23   counterfeit goods from defendants' ecommerce internet websites.

24       63.      The defendants use Facebook to conduct e-commerce scams where they steal images

25   of Plaintiff's product from Plaintiff's website and social media accounts and use those images to

26   advertise counterfeit products for sale in Facebook advertisements as their own, often for a heavily

27   discounted price. This directly infringes the exclusive rights held by Plaintiff and unfairly competes

28   with Plaintiff. The defendants use the Facebook Ad Platform to display their ads to interested

COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                    CASE NO.:3:23-CV-04716

consumers. Defendants use Facebook to connect and advertise to Facebook users based upon the users' interests, certain statistics and user preferences.

64.     If a Facebook user makes a purchase through an advertisement posted by a defendant or from the defendant's linked website, the buyer receives a cheap knockoff of Plaintiff's product, or nothing at all. The buyer pays for a product that they never receive, suffering damages. The Plaintiff has its intellectual property rights violated, loses out on sales, and the defendants cause irreparable damage to Plaintiff's integrity and reputation.

65.     The stolen and infringing images defendants show on Facebook advertising unfairly compete with Plaintiff.

66.     Defendants are the past and present controlling forces behind the advertising and sale of products bearing counterfeits and infringements of Plaintiff's intellectual property rights as described herein.

67.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores.

68.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of California through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

69.     Defendants use advertising on social media that links to Internet based e-commerce stores. Defendants use sophisticated advertising practices and tools to generate multiple ad versions using Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to imitate the StripHair brand and deceive the consumer to purchase counterfeit products from ad-linked website pages.

70.     Defendants use their Facebook pages and Internet based e-commerce stores to infringe the intellectual property rights of Plaintiff and others.

71.     Defendants' Facebook pages and Internet based e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights

11

are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

72.    The appearance of Defendants' Facebook pages and Internet based e-commerce stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the Betty's Best Marks

73.    Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their Facebook pages and Internet based e-commerce stores thereby increasing the value of their Facebook pages and Internet based e-commerce stores and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

74.    Since 2021, Plaintiff has searched out, observed, and recorded the defendants' use of fraudulent advertisements on Facebook. The defendants use software to create advertising that they place on Facebook with links to their websites in order to direct purchasers to buy counterfeit products.

75.    Defendants use software to alter Betty's Best photographs to create paid sponsored advertisements within a Facebook account that contain links to associated website pages with active shopping buttons. The advertisements copy Betty's Best Marks, the copyrighted Works and the HOPGT Design Patent. When a Facebook Ad is created, it is given a unique Facebook Ad Library ID number. Betty's Best has identified and tracked these infringing Facebook Ads in the online Facebook Ads Library[1].

76.    For two years, Plaintiff's employees or persons acting under their direction have searched Facebook Ads publicly available in the online Ads Library for specific terms that are common to Plaintiff and used by counterfeiters to drive purchasers to buy counterfeit goods. When Plaintiff discovered a Facebook Ad that used Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, Betty's Best submitted IP infringement reports for each advertisement to Facebook. To date, Plaintiff has submitted over 3,512 IP Infringement Reports to Facebook. A list

---

[1] *See* https://www.facebook.com/ads/library.

COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                    CASE NO.:3:23-CV-04716

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

documenting all the IP infringement reports submitted by Betty's Best to Facebook is attached as **Schedule "A"** to the Declaration of Sarah M. Owen in support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Asset Freeze.

77.     Despite Plaintiff's submission of over 3,512 IP infringement reports to Facebook, the defendants continue to purchase Facebook Ads to promote the sale of counterfeits of Plaintiff's products. All of the defendants' Facebook pages contain counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, or they link to other websites that contain counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. All of these Facebook Ads, Facebook Pages, and/or the websites they link to sell and offer to sell counterfeits of Plaintiff's products to unwitting consumers.

78.     All of the Facebook pages and Facebook Ads are owned, operated or administered by the Facebook advertisers identified on Schedule "A" to the Complaint who are located in China and are using and abusing Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to sell counterfeit products.

79.     Plaintiff will be unable to stop the counterfeiting of its Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent unless the Court grants preliminary injunctive relief enjoining defendants from further abuse of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

80.     Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of California and causing Plaintiff harm and damage within this jurisdiction.

81.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

82.     Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

83.     Defendants have never been licensed to use Plaintiff's intellectual property rights.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## COUNT I - TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

84.     Plaintiff incorporates the allegations of paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the Betty's Best Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

86.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Betty's Best Marks.

87.     Defendants are continuously infringing and inducing others to infringe one or more of the Betty's Best Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

88.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

89.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

90.     Defendants' above-described illegal actions constitute counterfeiting and infringement of one or more of the Betty's Best Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

91.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

92.     If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

93.     Plaintiff has been damaged.

94.     The harm caused to Plaintiff is irreparable.

## COUNT II - FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

95.    Plaintiff incorporates the allegations of paragraphs 1 through 83 of this Complaint as if fully set forth herein.

96.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of one or more of the Betty's Best Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

97.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Betty's Best Marks are virtually identical in appearance to Plaintiff's genuine goods.

98.    Defendants' Counterfeit Goods are different in quality from Plaintiff's goods, and are of much lower quality.

99.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

100.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

101.    Defendants have authorized infringing uses of one or more of the Betty's Best Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

102.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

103.    Defendants are using counterfeits and infringements of one or more of the Betty's Best Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

104.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

105.    Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

106.    Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

107.    Defendants are liable for any damages, including costs and attorneys' fees, incurred by Plaintiff.

108.    The harm caused to Plaintiff has been irreparable.

### COUNT III - COMMON LAW UNFAIR COMPETITION

109.    Plaintiff incorporates the allegations of paragraphs 1 through 83 of this Complaint as if fully set forth herein.

110.    This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to one or more of the Betty's Best Marks in violation of California's common law of unfair competition.

111.    Defendants' activities complained of herein constitute unfair methods of competition.

112.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of one or more of the Betty's Best Marks.

113.    Defendants are also using counterfeits and infringements of one or more of the Betty's Best Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

114.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of one or more of the Betty's Best Marks.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

115.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

116.    Plaintiff has been damaged.

The harm caused to Plaintiff has been irreparable.

## COUNT IV - UNFAIR COMPETITION UNDER CALIFORNIA STATUTORY LAW
### (Cal. Bus. & Prof. Codes § 17200, *et seq.*)

117.    Plaintiff incorporates the allegations of paragraphs 1 through 83 of this Complaint as if fully set forth herein.

118.    This is an action for statutory unfair competition against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing or sold under one or more of the Betty's Best Marks.

119.    Plaintiff is the owner of all common law rights in and to the Betty's Best Marks.

120.    Defendants' activities complained of herein constitute unfair methods of competition in violation of California's Business and Professions Codes §17200.

121.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using or bearing counterfeits and infringements of one or more of the Betty's Best Marks.

122.    Defendants are also using counterfeits and infringements of one or more of the Betty's Best Marks to unfairly compete with Plaintiff.

123.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of one or more of the Betty's Best Marks.

124.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

125.    Plaintiff has been damaged.

126.    The harm caused to Plaintiff has been irreparable.

17

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1

## COUNT V - COPYRIGHT INFRINGEMENT

2      127.    Plaintiff incorporates the allegations of paragraphs 1 through 83 of this Complaint as

3  if fully set forth herein.

4      128.    Plaintiff has complied in all respects with the Copyright Act of the United States and

5  all other laws governing copyright and secured the exclusive rights and privileges in and to the

6  copyrights at issue in this action.

7      129.    Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its copyrights for its advertising

8  and marketing photographs, videos, and website content.

9      130.    Defendants directly infringed Plaintiff's exclusive rights in its copyright registered

10  advertising and marketing photographs, videos, and website content under 17 U.S.C. § 106.

11      131.    Defendants copied, displayed, and distributed Plaintiff's copyrighted Works and/or

12  prepared derivative works based upon Plaintiff's copyrighted Works in violation of Plaintiff's

13  exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

14      132.    Defendants' conduct constitutes willful and direct copyright infringement of

15  Plaintiff's copyrighted Works.

16      133.    Defendants profited from the direct infringement of the exclusive rights of Plaintiff in

17  the Works at issue in this case under the Copyright Act.

18      134.    Defendants' infringement is not limited to the copyright infringement listed above.

19  Plaintiff will identify such additional infringement after discovery.

20      135.    On information and belief, there is a business practice of infringement by Defendants.

21      136.    Defendants routinely and intentionally infringe the intellectual property rights of

22  others, including but not limited to, acting with willful blindness and/or reckless disregard.

23      137.    Plaintiff has been damaged by the infringement.

24      138.    The harm to Plaintiff is irreparable.

25      139.    Plaintiff is entitled to temporary and permanent injunctive relief from Defendants'

26  willful infringement.

27      140.    Plaintiff is entitled to recover its actual damages and/or statutory damages, at its

28  election.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1    141.    Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this

2    action.

3    **COUNT VI - PATENT INFRINGEMENT**

4    142.    Plaintiff incorporates the allegations of paragraphs 1 through 83 of this Complaint as

5    if fully set forth herein.

6    143.    Plaintiff has the exclusive rights on Design Patent U.S. D841,900 S, claiming the

7    design features of its grooming tools.

8    144.    Defendants have infringed and continue to infringe the HOPGT Design Patent either

9    directly or indirectly through acts of contributory infringement or inducement in violation of 35

10   U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products,

11   namely the infringing and counterfeit products sold under one or more of the Betty's Best Marks.

12   145.    Defendants infringing and counterfeit products sold under one or more of the Betty's

13   Best Marks are the same in all material respects.

14   146.    Defendants' infringement, contributory infringement and/or inducement to infringe

15   has injured Plaintiff and it, therefore, is entitled to recover damages adequate to compensate it for

16   such infringement, but in no event less than a reasonable royalty.

17   147.    Defendants' infringement, contributory infringement and/or inducement to infringe

18   has been willful and deliberate because Defendants have notice of or knew of the HOPGT Design

19   Patent and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court

20   enters an injunction, which prohibits further infringement and specifically enjoins further

21   manufacture, use, sale, importation and/or offer for sale of products that come within the scope of

22   the HOPGT Design Patent.

23   WHEREFORE, Plaintiff prays for judgment against the defendants that:

24   A.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. §

25   1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives,

26   servants, employees, and all those acting in concert or participation therewith, from manufacturing

27   or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering

28   to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Betty's Best Marks;

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

from using the Betty's Best Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Betty's Best Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff; from copying, displaying, distributing or creating derivative works of Plaintiff's copyrighted Works.

B.     Entry of a Temporary Restraining Order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Betty's Best Marks, that copy, display, distribute or use derivative works of Plaintiff's copyrighted Works.

C.     Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. § 503.

D.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice

1   of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any

2   other alias seller identification names being used and/or controlled by defendants to engage in the

3   business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements

4   of the Betty's Best Marks.

5       E.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this

6   Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet

7   marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for

8   the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail

9   address known to be associated with Defendants' respective Seller IDs.

10       F.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this

11   Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators

12   and/or administrators who are provided with notice of an injunction issued by this Court

13   permanently remove from the multiple platforms, which include, inter alia, a direct platform, group

14   platform, seller product management platform, vendor product management platform, and brand

15   registry platform, any and all listings and associated images of goods bearing counterfeits and/or

16   infringements of the Betty's Best Marks via the e-commerce stores operating under the Seller IDs,

17   including but not limited to the listings and associated images identified by the "parent" and/or

18   "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and

19   upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or

20   infringements of the Betty's Best Marks associated with any ASIN linked to the same sellers or

21   linked to any other alias seller identification names being used and/or controlled by Defendants to

22   promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of

23   the Betty's Best Marks.

24       G.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's

25   inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website

26   operators and/or administrators who are provided with notice of an injunction issued by this Court

27   immediately cease fulfillment of and sequester all goods of each Defendant bearing the Betty's Best

28   Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

H.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that Facebook (and its parent company Meta), and all online shopping cart software providers the Defendants are using to advertise, promote and sell their counterfeit goods, shall immediately (i) identify all financial accounts and subaccounts associated with the Defendants and the Facebook Advertisers listed in Schedule "A" to the Complaint; (ii) identify all Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses corresponding to each one of the Facebook Advertisers listed on Schedule "A" to the Complaint; (iii) restrain the transfer of all funds of said Facebook Advertisers, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; (iv) immediately divert those restrained funds to a holding account for the trust of the Court; (v) provide Plaintiff's counsel the complete contact information including email addresses, links and/or any other data serving as identifiers, associated with each Facebook Advertiser; (vi) remove all Facebook Ads using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to promote the sale of counterfeit Betty's Best products; and (vii) during the pendency of this case, prohibit the Facebook Advertisers listed on Schedule "A" to the Complaint from posting advertisements on Facebook that use the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, or any colorable imitations thereof.

I.      Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

J.      Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1  K.  Entry of an Order requiring Defendant to account to and pay Plaintiff for all profits

2  and damages resulting from Defendant's copyright infringement, or statutory damages (at Plaintiff's

3  election), for all infringements involved in the action, with respect to any one work, for which

4  Defendant is liable in a sum of not less than $750 or more than $30,000 as the Court considers just

5  pursuant to 17 U.S.C. § 504(c)(1), or to the extent the Court finds that infringement was committed

6  willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant

7  to 17 U.S.C. § 504(c)(2).

8  L.  Entry of an Order requiring Defendant to account to and pay Plaintiff damages for

9  patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. § 284 which

10  shall in no event be less than a reasonable royalty.

11  M.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and

12  reasonable attorneys' fees and investigative fees, associated with bringing this action, including the

13  cost of corrective advertising.

14  N.  Entry of an Order that, upon Plaintiff's request, Defendants and any financial

15  institutions, payment processors, banks, escrow services, money transmitters, or marketplace

16  platforms, and their related companies and affiliates, identify and restrain all funds, up to and

17  including the total amount of judgment, in all financial accounts and/or sub-accounts used in

18  connection with the Seller IDs, or other alias seller identification or e-commerce store names used by

19  Defendants presently or in the future, as well as any other related accounts of the same customer(s)

20  and any other accounts which transfer funds into the same financial institution account(s) and remain

21  restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary

22  judgment entered herein.

23  O.  Entry of an award of pre-judgment interest on the judgment amount.

24  P.  Entry of an Order for any further relief as the Court may deem just and proper.

25  **JURY DEMAND**

26  Plaintiff hereby demands a trial by jury of all issues so triable.

27  DATED: September 13, 2023  Respectfully submitted,

28  */s/ Matthew L. Rollin*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Betty's Best, Inc.*

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                    CASE NO.:3:23-CV-04716