Joel B. Rothman (*Pro Hac Vice*)
Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com
Joel.rothman@sriplaw.com

Counsel for Plaintiff
Betty's Best, Inc.



**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BETTY'S BEST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE FACEBOOK ADVERTISERS LISTED ON SCHEDULE A,<br>Defendants. | CASE NO.: 4:23-cv-04716-HSG<br><br>**EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET FREEZE ORDER, EXPEDITED DISCOVERY ORDER, AND PRELIMINARY INJUNCTION** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT Plaintiff BETTY'S BEST, INC. ("Betty's Best") by and through its undersigned counsel, hereby requests that this Court, *ex parte*, enter a temporary restraining order, an order freezing and restraining transfer of assets, ordering expedited discovery, and setting a hearing on the preliminary injunction requested herein.

This application is made on the grounds that Defendants the FACEBOOK ADVERTISERS LISTED ON SCHEDULE A (collectively "Facebook Advertisers" or "Defendants") are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district on the Facebook platform that Meta Platforms, Inc. ("Meta") operates in this district by purchasing Facebook advertising that offers for

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

sale, links to, and promotes counterfeit goods and confusingly similar imitations of Plaintiff's intellectual property within this district on the Facebook platform and that contain pirated photographs and videos belonging to plaintiff; and

That Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its right to determine the manner in which its intellectual property is used and presented to the public; that Defendants have and continue to wrongfully trade and capitalize on Plaintiff's intellectual property; that Defendants by their activities are defrauding Plaintiff, certain non-party businesses, and the consuming public; that without an order freezing defendants' assets in the possession of Meta plaintiff will be deprived of a remedy for the infringement alleged in the Complaint; and that without an order requiring Meta to identify defendants and enjoin their further Facebook advertising on an expedited basis plaintiff will be unable to sue the defendants for their violations and plaintiff will continue to suffer irreparable harm.

This application is pursuant to 17 U.S.C §§ 502, 512(f), 1203, Fed. R. Civ. P. 65, 35 U.S.C. §§ 281, 283, The All Writs Act, 28 U.S.C. § 1651(a), and for expedited discovery pursuant to Fed. R. Civ. P. Rule 26(d)(1), and will be based on this Notice of Application, Memorandum of Points and Authorities, and the Declarations of Joel Rothman and Sarah M. Owen filed herewith.

DATED: September 19, 2023

*_/s/ Joel B. Rothman_*
JOEL B. ROTHMAN (*Pro Hac Vice*)
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
Attorneys for Plaintiff Viral DRM, LLC

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 4

A. BACKGROUND ON BETTY'S BEST AND ITS INTELLECTUAL PROPERTY ..... 4

1. Betty's Best's Trademark Rights ..... 4

2. Betty's Best's Copyright Rights ..... 6

3. Betty's Best's Patent Rights ..... 7

B. THE COUNTERFEITING ALLEGED IN THE SDFL ACTION AND THE TEMPORARY RESTRAINING ORDER ISSUED THERE ..... 7

C. The Facebook Advertisers' Counterfeiting on Facebook Advertisements to Drive Purchasers to their Scam Websites to Purchase Counterfeit Goods ..... 9

D. The Irreparable Harm to Plaintiff in the Form of Price Erosion, Damage to Reputation, and Loss of Goodwill Not Compensable by Damages Alone ..... 10

III. ARGUMENT ..... 12

A. A TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER, AND ASSET FREEZE ORDER IS ESSENTIAL TO PREVENT IMMEDIATE INJURY AND PRESERVE PLAINTIFF'S REMEDIES ..... 12

B. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION. ..... 13

1. Probability of Success on the Merits of Plaintiff's Claims. ..... 14

2. Plaintiff is Suffering Irreparable Injury from Copyright Infringement. ..... 16

3. Plaintiff is Suffering Irreparable Injury from Design Patent Infringement. ..... 17

4. Plaintiff is Suffering Irreparable Injury from False Designation of Origin / Unfair Competition / False Advertising. ..... 17

5. The Balance of Hardship Tips Sharply in Plaintiff's Favor. ..... 17

6. The Relief Sought Serves the Public Interest. ..... 18

C. The Equitable Relief Sought is Appropriate. ..... 18

1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Copyrights is Appropriate. ..... 18

2. Entry of an Asset Freeze Order on Defendants' Facebook Advertising Accounts and Production of Information for those Accounts including Associated Accounts used to Fund Facebook Advertisements by Defendants During the Pendency of this Action is Appropriate. 18

D. An Order for Expedited Discovery is Appropriate. ..... 21

E. A Bond Should Secure the Injunction. ..... 22

IV. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adobe Sys. v. Brenengen*,
928 F. Supp. 616 (E.D.N.C. 1996) ..... 17

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) ..... 18

*Beaty v. Brewer*,
649 F.3d 1071 (9th Cir. 2011) ..... 13

*C.B. Fleet Co. v. Unico Holdings, Inc.*,
510 F. Supp. 2d 1078 (S.D. Fla. 2007) ..... 17

*Cadence Design Sys. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ..... 16

*Chanel, Inc. v. Sunus Online Grp., L.L.C.*,
2014 WL 12558780 (C.D. Cal. Jan. 15, 2014) ..... 17

*Cisco Sys. v. Shenzhen Usource Tech. Co.*,
2020 U.S. Dist. LEXIS 127509 (N.D. Cal. July 20, 2020) ..... 18

*Columbia Ins. Co. v. seescandy.com*,
185 F.R.D. 573 (N.D. Cal. 1999) ..... 22

*Conair Corp. v. Le Angelique, Inc.*,
2014 WL 4634269 (D. Nev. Sept. 15, 2014) ..... 17

*Cottrell v. Unknown Corr. Officer*,
2000 U.S. App. LEXIS 21969 (9th Cir. Aug. 18, 2000) ..... 21

*CSC Holdings, Inc. v. Greenleaf Elecs.*,
No. 99 C 7249, 2000 WL 715601 (N.D. Ill. June 1, 2000) ..... 20

*Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.*,
2014 WL 4679001 (C.D. Cal. Sept. 18, 2014) ..... 17

*Disney Enters. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ..... 14

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ..... 16

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ..... 15-16

*F.T. Int'l Ltd v. Mason*,
2000 WL 1514881 *3 (E.D. Pa. Oct. 11, 2000) ..... 20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ..... 14

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*Feldenkrais Guild of N. Am. v. Wildman*,
2018 U.S. Dist. LEXIS 73714 (N.D. Cal. May 1, 2018) ..... 18

*Fox Film Corp. v. Doyal*,
286 U.S. 123 (1932) ..... 16

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ..... 14

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) ..... 21, 22

*Go Daddy Operating Co. v. Ghaznavi*,
2018 U.S. Dist. LEXIS 33002 (N.D. Cal. Feb. 28, 2018) ..... 18

*Grizzle v. Cnty. of San Diego*,
2017 U.S. Dist. LEXIS 121040 (S.D. Cal. July 31, 2017) ..... 21

*Grupo Mexicano De Desarrollo v. All. Bond Fund*,
527 U.S. 308 (1999) ..... 21

*Gucci Am., Inc. v. Los Altos Boots, Inc.*,
2014 U.S. Dist. LEXIS 190411 (C.D. Cal. Aug. 27, 2014) ..... 18

*Int'l Star Class Yacht Racing Ass'n v. Hilfiger*,
80 F.3d 749 (2d Cir. 1996) ..... 20

*Kemp v. Peterson*,
940 F.2d 110 (4th Cir. 1991) ..... 20

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.* ,
51 F.3d 982 (11th Cir. 1995) ..... 20, 21

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) ..... 15

*MGM Resorts Int'l v. Does*,
2017 U.S. Dist. LEXIS 138204 (D. Nev. Aug. 28, 2017) ..... 21-22, 22

*Reebok Int'l Ltd. v. Marnatech Enter.*,
737 F. Supp. 1521 (S.D. Cal. 1989) ..... 21

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..... 15

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010) ..... 16

*SEC v. ETS Payphones, Inc.*,
408 F.3d 727 (11th Cir. 2005) ..... 20

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ..... 15

*Stevenson v. Beard*,
2017 U.S. Dist. LEXIS 166368 (S.D. Cal. Oct. 6, 2017) ..... 21

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* , 240 F.3d 832 (9th Cir. 2001) .......... 13

*Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, 2018 U.S. Dist. LEXIS 199020 (S.D. Cal. May 10, 2018) .......... 18

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999) .......... 21

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) .......... 13

*Zamfir v. Casperlabls, L.L.C.*, 528 F. Supp. 3d 1136 (S.D. Cal. 2021) .......... 14

**Statutes**

15 U.S.C. § 1125 .......... 14

17 U.S.C. § 5 .......... 15

17 U.S.C. § 43 .......... 15

17 U.S.C. § 922 .......... 15

17 U.S.C. § 502 .......... 18

17 U.S.C. § 512(f) .......... ii

17 U.S.C. § 1203 .......... ii

17 U.S.C. § 921 .......... 15

17 U.S.C. § 922 .......... 15

28 U.S.C. § 1651 .......... ii

35 U.S.C. § 281 .......... ii

35 U.S.C. § 282 .......... 15

35 U.S.C. § 283 .......... ii

**Rules**

Fed. R. Civ. P. 26 .......... ii, 21

Fed. R. Civ. P. 35 .......... ii

Fed. R. Civ. P. 45 .......... 21

Fed. R. Civ. P. 65 .......... *passim*

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Plaintiff BETTY'S BEST, INC. ("Betty's Best") by and through undersigned counsel, hereby moves this Court for a temporary restraining order, and upon expiration of the temporary restraining order, a preliminary injunction against the Defendants the FACEBOOK ADVERTISERS LISTED ON SCHEDULE A (collectively "Facebook Advertisers" or "Defendants"), and an order restraining transfer of assets, pursuant to 17 U.S.C §§ 502, 512(f), 1203, Fed. R. Civ. P. 65, 35 U.S.C. §§ 281, 283, The All Writs Act, 28 U.S.C. § 1651(a), and for expedited discovery pursuant to Fed. R. Civ. P. Rule 26(d)(1), and this court's inherent authority, and in support thereof states as follows:

## I. INTRODUCTION

Betty's Best is a California corporation and the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs. Betty's Best owns the trademarks, copyrights and design patent described below covering the StripHair Gentle Groomer including the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER.

Defendants are believed to be foreign individuals operating fraudulent scam websites on the internet. Defendants drive traffic and potential purchasers to their websites using scam ads on Facebook. Attached to the complaint as Schedule A is a list of advertisements placed on Facebook by the defendants. When a Facebook user clicked on any of the ads listed in Schedule A placed by defendants, the user was taken to websites online that offered for sale and sell counterfeit goods. The defendants' Facebook advertisements copy plaintiff's copyrighted product photos and product demonstration videos, and show plaintiff's patented designs without plaintiff's permission.

Since 2021, Plaintiff has searched out, observed, and recorded this practice engaged in by the defendants who are also believed to be the owners/operators of the websites selling counterfeit goods. The defendants use sophisticated advertising practices and tools to generate multiple versions of advertisements using plaintiff's copyrighted photographs and videos and design patent to imitate the StripHair brand and deceive the consumer to purchase counterfeit products from ad-linked website pages. The defendants also use software to alter Betty's Best copyrighted photographs and videos in their paid sponsored advertisements and on their Facebook pages.

To date, plaintiff has submitted over 3,512 IP Infringement Reports to Facebook. However, the fraudulent ads have continued. Without assistance from this Court the defendants will continue

to post Facebook Ads to promote the sale of counterfeit Betty's Best products using plaintiff's intellectual property.

Plaintiff documented this activity and it is set forth in Schedule "A" to the Complaint. Plaintiff's claims here are related to those Plaintiff asserted in a separate complaint in the Southern District of Florida against the owners and operators of the websites that sell and promote the sale of counterfeit goods that the defendants' Facebook advertisements link to. *Betty's Best, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A*, Case No. 1:23-cv-22322-KMW (the "SDFL Action'). Plaintiff moved for a TRO in the SDFL Action and the district court issued a Temporary Restraining Order (Rothman Decl. Ex. 1) confirming the Report and Recommendation of the Magistrate Judge to issue that TRO (Rothman Decl. Ex. 2). However, the TRO in the SDFL Action does not reach Facebook or the illegal activity engaged in by defendants on Facebook.

Plaintiff filed this case to stop the use of its intellectual property on Facebook, determine the identities of the Facebook advertisers responsible, and preserve its remedy for infringement to the extent the Facebook advertisers are different from the counterfeiters sued in the SDFL Action. Plaintiff does not know if the defendants here who paid for and sponsored advertising on Facebook directing purchasers to the scam websites are the same individuals or entities operating the scam websites. Plaintiff does not know who is advertising on Facebook, only Facebook knows. Only by obtaining the identifying information for defendants from Facebook and comparing it to the information obtained in the SDFL Action can plaintiff determine who bears the full scope of responsibility for the illegal acts committed against Betty's Best.

Plaintiff also filed this action because Meta is located in this district. Meta's terms of use require suit in this district. Even though plaintiff is not suing Meta in this action, plaintiff is seeking preliminary relief against Meta and Meta should be permitted to appear and be heard regarding the preliminary relief plaintiff seeks in this motion on an ex parte basis.[1] All the defendants have

[1] To be clear: plaintiff is not asserting claims in this case against Meta, the owner of Facebook, for the conduct described in the complaint. Plaintiff seeks expedited discovery of the defendants' identities, a preliminary injunction preventing the defendants from placing advertising on Facebook

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Facebook pages. All the defendants place Facebook advertisements. All the Facebook advertisements infringe plaintiff's intellectual property rights. All the defendants are believed to be located in China. All the defendants link their Facebook advertisements to websites that sell counterfeit goods.

**Attached to the Declaration of Sarah Owen** in support of this motion are the following exhibits relevant to this motion:

| | |
|---|---|
| Exhibit 1 | Discrete list of Facebook Advertisers shown on Schedule A to the Complaint that Plaintiff seeks identification of a TRO/preliminary injunction against further scam advertising using Plaintiff's intellectual property, and an asset restraint |
| Exhibit 2 | List of Facebook Advertisers shown on Schedule A who match the defendants in the SDFL Action |
| Exhibit 3 | List of Facebook Advertisers shown on Schedule A who do not match the defendants in the SDFL Action based on the information currently in plaintiff's possession. |
| Exhibit 4 | Screenshots showing the Defendants' Uses of Plaintiff's Copyrights, Design Patents, and Trademark Infringement/False Advertising |

All the statutes sued upon permit plaintiff to obtain an accounting and to recover, as an equitable remedy, the actual damages suffered as result of the infringement and any additional profits of the defendants that are attributable to the infringement and are not taken into account in computing the actual damages. This disgorgement remedy will be worthless unless plaintiff can identify the defendants, prove the details of the defendants' infringements in Facebook advertisements using evidence in the sole possession of Facebook, and freeze the defendants' funds in the possession of Facebook or in accounts used by defendants to fund their scam Facebook advertising. All the defendants are foreign and involved in online scams. Plaintiff has good reason to believe these foreign defendants will hide or transfer their funds unless the funds in the possession of Facebook and in accounts linked to their Facebook advertising accounts are restrained.

---

that infringes plaintiff's intellectual property while this case is pending, and an asset freeze of assets in the possession of Facebook for the defendants to preserve plaintiff's remedy.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## II. STATEMENT OF FACTS

### A. BACKGROUND ON BETTY'S BEST AND ITS INTELLECTUAL PROPERTY

1. Betty's Best is a California Corporation with its principal place of business in Santa Ynez, California. The President and Chief Executive Officer of Betty's Best is Sarah M. Owen. (Owen Decl. ¶¶ 4, 5). Betty's Best incorporated on January 1, 2016, and has been in continuous operation since then. (Owen Decl. ¶ 6).

2. Betty's Best is the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs. (Owen Decl. ¶ 7). Betty's Best owns the trademarks, copyrights and design patent described below that are the subject of this action in United States. (Owen Decl. ¶ 9). designs and sells its StripHair Gentle Groomer under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER. (Owen Decl. ¶ 10).

3. Betty's Best's products are sold through hundreds of authorized retailers in the United States. Online sales of Betty's Best Marks products via the web represent a significant portion of Plaintiff's business. (Owen Decl. ¶ 26). Like other intellectual property rights owners, Betty's Best suffers ongoing violations of its rights by counterfeiters and infringers. (Owen Decl. ¶ 12). This harms Betty's Best, it dupes the consuming public, and the Defendants earn substantial profits. (Owen Decl. ¶ 13).

4. To combat the harm caused by Defendants' infringing conduct, Betty's Best spends money on legal fees and investigative fees to enforce its intellectual property rights. (Owen Decl. ¶ 14). The explosion of internet infringement forced Betty's Best to spend time and money to protect itself and its customers from the confusion and brand erosion. (Owen Decl. ¶ 15).

#### 1. Betty's Best's Trademark Rights

5. Plaintiff created and sells unique patented grooming tools under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER (collectively the "Betty's Best Marks"), the first multi-purpose grooming tools of their kind, known as the "6-in-1 Shedding Grooming Massage brush" for horses and pets that can be used in 6 ways to shed, groom, shine, shampoo, scrape and massage. The StripHair Gentle Groomer is ideal for short-haired animals because it will not harm the skin, but it will also shed out a thick hairy coat in the spring-time molting season while providing a therapeutic massage and adding shine to the coat. It's safe to use everywhere, even the face and legs. The material used to make the StripHair Gentle Groomer is

perfectly balanced to achieve outstanding durability, flexibility, cleanliness, sun protection, and just the perfect amount of grip. (Owen Decl. ¶ 16).

6. Betty's Best is the owner of all rights in and to the Betty's Best Marks in Standard Characters, namely, 5072866 STRIPHAIR (first used on October 01, 2014, and first used in commerce on December 16, 2014) and 5328641 THE GENTLE GROOMER (first used and first used in commerce on 2015) for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21. The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office. The STRIPHAIR and THE GENTLE GROOMER Marks are incontestable. (Owen Decl. ¶¶ 17-19).

7. The Betty's Best Marks identify and distinguish Plaintiff's high-quality and unique patented grooming tools. (Owen Decl. ¶ 21).

8. The Betty's Best Marks are exclusive to Betty's Best and are displayed extensively on Plaintiff's products and in its marketing and promotional materials. (Owen Decl. ¶ 27). Betty's Best products have been extensively promoted and advertised at great expense to Betty's Best. (Owen Decl. ¶ 28). Betty's Best Marks are distinctive and signify to the purchaser that the products come from Betty's Best and are manufactured to its quality standards. The authentic products are all made in United States. (Owen Decl. ¶ 29).

9. The goodwill associated with the Betty's Best Marks is of incalculable and inestimable value. (Owen Decl. ¶ 31). Betty's Best has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Betty's Best Marks in connection with Betty's Best's products. Betty's Best's average marketing and promotional investments are over $225,000 per year. (Owen Decl. ¶ 32). Product sales using the Betty's Best Marks generated $1.6M (USD) in 2021, and, as a result, the consuming public readily identifies the Betty's Best Marks as representing high-quality and unique goods sponsored and approved by Plaintiff. (Owen Decl. ¶¶ 35, 36).

10. Plaintiff monitors and polices the Betty's Best Marks carefully. (Owen Decl. ¶ 38). Genuine goods with the Betty's Best Marks are advertised and promoted by Plaintiff, authorized distributors, and third parties on the Internet. (Owen Decl. ¶ 39). Visibility on the Internet, including in search engines like Google, Yahoo!, and Bing, is important to Plaintiff's marketing efforts. (Owen Decl. ¶ 40). Plaintiff invests in internet marketing and consumer education, including search engine

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

optimization ["SEO"] strategies, that educate consumers about the value of Plaintiff's products and the Betty's Best Marks (Owen Decl. ¶¶ 42, 43).

**2. Betty's Best's Copyright Rights**

11. Plaintiff advertises, markets, promotes and sells its products under the Betty's Best Marks using photographs, videos, and through a website that are protected by copyright and registered with the Copyright Office (collectively the "Works").

12. Plaintiff's photographs are duly registered with the Register of Copyrights as visual materials, as shown in the table below. (Owen Decl. ¶¶ 44, 45).

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 |

13. Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures, as shown in the table below. (Owen Decl. ¶ 46).

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 |
| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 |

14. Plaintiff's website content comprising photographs and text, titled "striphair.com website" is duly registered with the Register of Copyrights under the Reg. No. VA 2-271-013, effective from October 6, 2021. (Owen Decl. ¶ 47).

15. The copyrighted photographs and the website content show Betty's Best's high-quality and unique patented grooming tools design features, its packaging, and its effective use from different perspectives in horses and pets. (Owen Decl. ¶ 48). Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Betty's Best and its authorized distributors using Betty's Best's copyrighted photographs and through its website content. (Owen Decl. ¶ 49).

16. Betty's Best has never granted authorization to anyone to advertise, market or promote unauthorized goods using Betty's Best's copyrighted photographs and its website content. (Owen Decl. ¶ 50).

**3. Betty's Best's Patent Rights**

17. Plaintiff's grooming tools' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under the U.S. Patent No. D841,900 S titled "HORSE OR PET GROOMING TOOL" (the "HOPGT Design Patent"). (Owen Decl. ¶ 51). The HOPGT Design Patent was registered on February 26, 2019, has not expired and is valid. (Owen Decl. ¶ 53).

18. The HOPGT Design Patent relates to the ornamental design for a horse or pet grooming tool as shown and described through four figures corresponding and ordering in front, top, bottom and side views, in which the rear view of the design is identical to the front view and both side views are identical each other. (Owen Decl. ¶ 52).

19. Plaintiff marked its products with a Patent Notice (Owen Decl. ¶ 54). Plaintiff has never granted authorization to anyone to import, make, use or sell unauthorized goods using the HOPGT Design Patent. (Owen Decl. ¶ 55).

**B. THE COUNTERFEITING ALLEGED IN THE SDFL ACTION AND THE TEMPORARY RESTRAINING ORDER ISSUED THERE**

20. The overwhelming success of Plaintiff's products resulted in counterfeiting by individuals and entities unlawfully using the trademarks, copyrights, design patent and goodwill built by Betty's Best to sell cheap imitation counterfeits of Betty's Best's products. The complaint in the SDFL Action (Rothman Decl. Ex. 3) explains in detail how the defendants there used the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to promote, advertise, distribute,

sell and/or offer for sale—through online storefronts on internet marketplace accounts using their respective Seller IDs—goods bearing counterfeit and infringing copies of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, without authorization.

21. In support of plaintiff's anticounterfeiting program, plaintiff filed the SDFL Action and immediately sought the entry of a Temporary Restraining Order (TRO) and Asset Freeze Order concerning the suspicious websites and online marketplace listings identified by plaintiff's proactive Internet sweeps and reported to plaintiff by consumers. (Rothman Decl. Ex. 4, Application for TRO; Rothman Decl. Ex. 5, Owen Decl. in Support of TRO; Rothman Decl. Ex. 6, Rothman Decl. in Support of TRO). Plaintiff also investigated the promotion and sale of counterfeit and infringing products to obtain payment account information for funds paid to the counterfeiters sued in the SDFL Action for the sale of counterfeit products. These investigations established that the counterfeiters sued in the SDFL Action use Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Walmart.com, Wish.com, and others to sell counterfeit versions of plaintiff's products from foreign countries such as China to consumers in the United States.

22. Thereafter, Betty's Best or someone under its supervision accessed the Internet based e-commerce stores operating under their seller identification names through Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Walmart.com, Wish.com, and others, and Betty's Best or someone under its supervision viewed counterfeit products using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, added products to the online shopping cart, proceeded to a point of checkout, and exchanged data with each e-commerce store. Betty's Best also placed test orders from the e-commerce stores operating under the Seller IDs for the purchase of various products all bearing counterfeits and infringements of Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, and upon receipt determined that the products received were counterfeit.

23. On the strength of plaintiff's thorough investigation, and on the basis of the evidence submitted in the support of Betty's Best's application for TRO in the SDFL Action, on August 24, 2023, the Magistrate Judge issued its detailed report and recommendation that the TRO be granted, and this was followed quickly on September 1, 2023, by the district court's order granting the TRO. (Rothman Decl. Ex. 1, 2). Plaintiff also filed a motion for alternate service which the court in the SDFL Action granted. (Rothman Decl. Ex. 7, 8).

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

24. Plaintiff served the TRO on Alibaba.com, AliExpress.com, Amazon.com, eBay.com, Joom.com, Newegg.com, Walmart.com, Wish.com, and other online marketplaces. Plaintiff also served the TRO on Shopify—an e-commerce shopping cart software company—and on several payment processors including PayPal. Plaintiff is still awaiting complete responses and has not served the defendants yet because plaintiff does not have email addresses to serve pursuant to the order authorizing alternate service in the SDFL Action.

25. The response plaintiff received from PayPal is very revealing and indicates the scope of the fraud perpetuated by the defendants in both cases. PayPal was provided with the domain names for certain defendants on Schedule A to the Complaint in the SDFL Action who are Facebook advertisers and who plaintiff believes are also defendants in this action. In response, PayPal reported that it froze over $20 Million USD in the accounts for these defendants. **All the defendants in the SDFL Action with PayPal balances totaling over $20M operated websites promoting the sale of counterfeit products that were linked to and promoted by the Facebook advertising placed by the defendants in this case.** This fact alone indicates the huge scale of the defendants' fraud on plaintiff and the public at large, and the need for a further asset freeze in this case.

**C. The Facebook Advertisers' Counterfeiting on Facebook Advertisements to Drive Purchasers to their Scam Websites to Purchase Counterfeit Goods**

26. Starting in 2021, Betty's Best began finding counterfeiting of its intellectual property in advertising on Facebook with links to websites selling counterfeit goods. Plaintiff investigated, searched out, observed, and recorded this practice. Plaintiff observed that the Facebook Advertisers used sophisticated advertising practices and tools to generate multiple ads and multiple versions of ads using Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to imitate the StripHair brand and deceive consumers to purchase counterfeit products from ad-linked website pages. (Owen Decl. ¶¶ 57-68).

27. Plaintiff observed counterfeit sellers using altered versions of Betty's Best photographs in paid sponsored advertisements within Facebook accounts with ad links directly to associated website pages with active shopping buttons that also showed uses of Betty's Best Marks, the copyrighted Works and the HOPGT Design Patent. For over twenty-two months, Plaintiff searched Facebook Ads, made publicly available in the online Ads Library, for specific terms that are common to Betty's Best and used also by counterfeiters. (Owen Decl. ¶¶ 57-68). Plaintiff documented this activity and it is set forth in Schedule "A" to the Complaint. To date, Plaintiff has submitted over 3,512 IP Infringement Reports to Facebook for the fraudulent Facebook ads in an

attempt to stop Facebook Ad buyers from using Facebook Ads to promote the sale of counterfeit Betty's Best products. However, Facebook has failed to take action to stop this activity to date.

28. All of the Facebook pages and Facebook Ads are owned, operated or administered by the defendants identified on Schedule "A" to the Complaint who are located in China and are using and abusing Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to sell counterfeit products. Plaintiff will be unable to stop the counterfeiting of its Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent without a Temporary Restraining Order requiring Facebook to:

a. **Produce** on an expedited basis information sufficient to show the identities of the Facebook advertisers and owners of the associated Facebook pages responsible for the Facebook advertising **who are listed on Exhibit 1 to the Declaration of Sarah Owen**;

b. **Prevent** the Facebook advertisers and owners of the associated Facebook pages listed **who are listed on Exhibit 1 to the Declaration of Sarah Owen** from continuing to place Facebook advertising using plaintiff's intellectual property during the pendency of this case; and

c. **Preserve** plaintiff's remedy for infringement during the pendency of this case by freezing defendants' assets in the possession of Facebook for **the Facebook Advertisers listed on Exhibit 1 to the Declaration of Sarah Owen** and require Facebook to provide the information for the defendants' accounts used to pay for and fund their Facebook advertising practices while this case is pending.

**D. The Irreparable Harm to Plaintiff in the Form of Price Erosion, Damage to Reputation, and Loss of Goodwill Not Compensable by Damages Alone**

29. Meta maintains a set of Advertising Standards for Facebook advertisements. (Rothman Decl. Ex. 9). These standards are based on certain Meta "core values" and principles including "PROTECTING PEOPLE FROM UNSAFE AND DISCRIMINATORY PRACTICES" wherein Meta says, "Our policies require all advertisers to comply with the laws in their jurisdiction, not engage in discriminatory practices, and not sell illegal or unsafe substances." *Id.* Meta prohibits "Third-Party Infringement" and says:

> Ads may not contain content that infringes upon or violates the intellectual property rights of any third party, including copyright, trademark or other legal rights. This includes, but is not limited to, the promotion or sale of counterfeit goods, such as products that copy the trademark (name or logo) and/or distinctive features of another company's products to imitate a genuine product.



SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*Id.*

30. All of the defendants' Facebook ads violated the Meta Advertising Standards. For example, Ms. Owen attests that the screenshots shown on Exhibit 4 to the Declaration of Susan Owen showing Facebook Ads placed by the defendants on Facebook all contain infringing versions of the Betty's Best copyrighted Works. (Owen Decl. ¶¶ 67-68 and Ex. 4 thereto).

31. Defendants are promoting the sale of infringing goods to consumers within this district and throughout the United States. Defendants make substantial sums of money preying on members of the public, many of whom have no knowledge defendants are defrauding them. Defendants are responsible for thousands of Facebook advertisements using the copyrighted Works, and the HOPGT Design Patent. Each advertisement results in a direct loss to Betty's Best. (Owen Decl. ¶¶ 58-60, 65, 66, 72-81, 90).

32. Defendants falsely represent in their Facebook Ads that their counterfeit and infringing goods are genuine and authentic. Defendants' internet activities infringe on Plaintiff's intellectual property rights. The Facebook Ads and associated Facebook advertising accounts are a substantial part of the means by which defendants further their scheme and cause harm to Plaintiff. (Owen Decl. ¶¶ 58, 68).

33. As the illegal marketplace for Betty's Best's products grows on the Internet, the legitimate marketplace for authentic Betty's Best's products shrinks. Monetary damages cannot adequately compensate Betty's Best for ongoing infringement because monetary damages fail to address the loss of control and damage to Betty's Best's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement. (Owen Decl. ¶¶ 69-71).

34. Betty's Best's goodwill and reputation are irreparably damaged when the Betty's Best Marks are used on Facebook Ads to market goods not authorized, produced or manufactured by Plaintiff. Moreover, brand confidence is damaged, which can result in loss of future sales and market share. The harm to Betty's Best's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. Betty's Best is further irreparably harmed because the Facebook advertisers take away Betty's Best's ability to control its intellectual property and the nature and quality of Counterfeit Products. (Owen Decl. ¶¶ 72-75).

35. Loss of quality control over goods advertised using the Betty's Best Marks and, in turn, loss of control over our reputation, is neither calculable nor precisely compensable. The promotion of Facebook advertising using the Betty's Best Marks causes consumer confusion that weakens the Betty's Best Marks' brand recognition and reputation. Mistake and confusion will cause consumers to believe Plaintiff offers low quality products; confused consumers who buy inferior quality infringing products thinking they are genuine undermines Plaintiff's reputation and goodwill. (Owen Decl. ¶¶ 76-78).

36. Even if a consumer knows she is buying counterfeit goods, prospective consumers who see Facebook Ads may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Betty's Best's products. Such post-sale confusion results in further damage Betty's Best's reputation and correlates to a loss of unquantifiable future sales. (Owen Decl. ¶ 80).

37. Betty's Best is further irreparably damaged due to a loss of exclusivity. Betty's Best's extensive marketing and innovative patented designs are aimed at growing and sustaining sales. When Facebook advertisers use the Betty's Best Marks on goods without authorization, the exclusivity of the Betty's Best's products, as well as Betty's Best's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. (Owen Decl. ¶ 81).

## III. ARGUMENT

### A. A TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER, AND ASSET FREEZE ORDER IS ESSENTIAL TO PREVENT IMMEDIATE INJURY AND PRESERVE PLAINTIFF'S REMEDIES

A temporary restraining order may be granted without written or oral notice where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Entry of a TRO is warranted here. Plaintiff demonstrated that (1) defendants engaged in trademark, copyright, and patent infringement in Facebook advertising; (2) defendants linked their Facebook advertisements to websites that sold counterfeit versions of plaintiff's products; (3) defendants all concealed their true identities to avoid detection and discovery of their true identities; (4) defendants all reside outside the United States in countries with weak legal regimes and copyright protections where pursuing defendants for recovery of plaintiff's damages will be impossible.



SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

The entry of a Temporary Restraining Order would immediately preserve the *status quo* by preventing the Facebook advertisers and owners of the associated Facebook pages listed on Schedule A to the Complaint from continuing to place Facebook advertising using plaintiff's intellectual property during the pendency of this case; preserving plaintiff's remedy for infringement during the pendency of this case by freezing defendants' assets in the possession of Facebook and requiring Facebook to provide the information for the defendants' accounts used to pay for and fund their Facebook advertising; and require expedited production of the defendant Facebook advertisers' identities so that they can be served and named as defendants in this case. Absent a TRO, defendants can and, based upon plaintiff's counsel's past experience, will significantly alter the *status quo* before the Court can determine the parties' respective rights.

The Facebook advertising accounts at issue are under defendants' complete control, and defendants can change ownership, transfer funds, change payment accounts, and transfer assets and ownership of their Facebook accounts and pages at a moment's notice. (Rothman Decl. ¶ 7). Defendants can easily and quickly transfer and secrete the funds sought to be restrained and thereby thwart the Court's ability to grant meaningful accounting and disgorgement of profits relief. *Id.*

Defendants' assets will be unavailable for recovery or an accounting of profits without the entry of a TRO. The business of infringers is built on deliberate misappropriation of rights and property belonging to others. Proceeding on an *ex parte* basis is a well-established practice.

### B. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

In the Ninth Circuit, "[t]he standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v. Brewer*, 649 F.3d 1071 (9th Cir. 2011). *See also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 24*0 F.3d 832, 839 n.7 (9th Cir. 2001).

"To be entitled to injunctive relief, a movant must demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balances of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty*, 649 F.3d at 1071 citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

"A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the balance of hardships … tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 856-57 (9th Cir. 2017). "Likelihood of success on the merits 'is the most important' *Winter* factor." *Disney Enters*, 869 F.3d at 856 quoting *Garci v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

**1. Probability of Success on the Merits of Plaintiff's Claims.**

**a) Likelihood of success on copyright infringement**

A copyright infringement action requires a plaintiff to prove (1) ownership of a valid copyright, and (2) actionable copying by the defendant. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff has established it is the owner of valid copyrights in the works listed in the complaint. Plaintiff registered the works at issue that are the subject of the copyright claim in the complaint with the Copyright Office, and true and correct copies of the copyright registrations are attached to plaintiff's complaint. Plaintiff's valid copyright registrations satisfies the first prong of the test for copyright infringement.

Plaintiff has also established defendants' actionable copying based on the testimony in plaintiff's declaration; Schedule A to the Complaint showing the Facebook advertisers and ads; and the Exhibits to the Declaration of Susan Owen including Exhibit 4 showing examples of the Facebook Ads where the plaintiff's works were reproduced. A likelihood of success on plaintiff's copyright infringement claim is established.

**b) Likelihood of success on claims of false designation of origin/false advertising/unfair competition**

"To prevail on a claim of false association or false designation of origin [in violation of 15 U.S.C. § 1125(a)], a plaintiff must show that: (1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts." *Zamfir v. Casperlabls, LLC*, 528 F.Supp.3d 1136, 1143 (S.D. Cal. 2021).

"The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

"California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1127 (N.D. Cal. 2008). "[T]o pursue either an individual or a representative claim under the California unfair competition law," a plaintiff "must have suffered an 'injury in fact' and 'lost money or property as a result of such unfair competition.'" *Id*. "The term "unfair" as it is used in the UCL context has been defined in numerous ways, none of which has yet been adopted as controlling by the California Supreme Court or the Ninth Circuit in the context of consumer fraud." *Id.* at 921.[2] "The unlawful prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Id*. at 922.

Plaintiff's evidence satisfies these requirements.

**c) Likelihood of Success on Patent Infringement.**

A patent is presumed valid. 35 U.S.C. § 282. Patent infringement is determined by comparing the patent claims to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Design patent infringement occurs if, in the eye of an ordinary purchaser, giving such attention as a purchaser usually gives, two designs are so similar that the purchaser, familiar with the prior art, would be deceived by the similarity between the claimed design and the accused designs, inducing him to purchase one supposing it to be the other. *Egyptian Goddess, Inc.*

[2] California courts have defined "unfair" business practice as: (1) a practice that offends established public policy, or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; (2) a practice the utility of which is outweighed by the gravity of the harm to the victim, and, borrowing from section 5 of the Federal Trade Commission Act, as a practice that is (i) substantially injurious to the consumer, where (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury is not one that consumers themselves could reasonably have avoided." *Id*. at 921-922.

*v. Swisa, Inc.*, 543 F.3d 665, 684 (Fed. Cir. 2008) (en banc) (announcing the so-called "three-way test" comparing the patent, accused device, and closest prior art).

Likelihood of success on Plaintiff's patent infringement claim is shown here. Betty's Best is the owner of all rights in and to the HOPGT Design Patent which claims the ornamental design for a horse or pet grooming tool (Owen Decl. ¶¶ 51-52). A comparison of the design claimed in the HOPGT Design Patent to the Defendants' Goods shows that the Defendants' Goods infringe the HOPGT Design Patent. (Owen Declaration ¶ 70, Comp. Ex. 1; Complaint Exhibit 5). Therefore, a likelihood of success on Plaintiff's patent infringement claim is shown.

**2. Plaintiff is Suffering Irreparable Injury from Copyright Infringement.**

A copyright holder possesses "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932)). Defendants' infringing conduct deprives Plaintiff of control over his exclusive copyright rights, causing irreparable harm. *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (holding violation of copyright owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances) (quoting *eBay*, at 395). These harms are notoriously difficult to quantify, and accordingly are considered irreparable. "[A] presumption of irreparably injury arises if the plaintiff is able to show a likelihood of success on the merits of its copyright infringement claim." *Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 826-27 (9th Cir. 1997).

Defendants blatantly copied Plaintiff's works. Defendants downloaded, edited, and reuploaded plaintiff's works as part of their Facebook advertising. Defendants' actions are in total disregard for plaintiff's right to exclude them from using its works and cause plaintiff irreparable harm to its efforts to monetize and profit from its works. Every time defendants copy plaintiff's product photographs and videos for Facebook advertising, plaintiff loses of control over plaintiff's intellectual property and goodwill. Defendants' Facebook advertising has significantly harmed plaintiff by undermining its brand and business, diluting its brand and reputation, fragmenting its audience of potential buyers, and imposing legal complexities and costs. These damages are neither calculable nor precisely compensable.

SRIPLAW
California ◆ Georgia ◆ Florida ◆ Tennessee ◆ New York

**3. Plaintiff is Suffering Irreparable Injury from Design Patent Infringement.**

In design patent cases, irreparable harm is likely where the defendant's infringement results in lost sales, damages the plaintiff's reputation and goodwill, and prevents the plaintiff from protecting its property rights. See *Conair Corp. v. Le Angelique, Inc.*, No. 2:14-CV-01149-RCJ, 2014 WL 4634269 at *6 (D. Nev. Sept. 15, 2014) (collecting cases finding irreparable injury for these types of harm).

**4. Plaintiff is Suffering Irreparable Injury from False Designation of Origin / Unfair Competition / False Advertising.**

Plaintiff's declaration establishes a likelihood of success on the merits because Defendants have engaged in false advertising on Facebook and related counterfeiting activities attempting to capitalize on the success of Betty's Best's product and the Betty's Best Marks. Moreover, Defendants' counterfeiting and infringing activities has caused Plaintiff to lose control over its goodwill and reputation in the marketplace.

**5. The Balance of Hardship Tips Sharply in Plaintiff's Favor.**

Because defendants are engaged in infringement, "the only hardship [they] will suffer as a result of an injunction is court-ordered compliance with the copyright laws." *Adobe Systems, Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996). In other copyright cases, the Courts have ruled that the evidence of irreparable harm to plaintiff far outweighs the harm that a preliminary injunction may cause Defendants. *CB Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (holding a company cannot build a business on infringements and then argue that enforcing the law will cripple that business). The same is true in trademark cases, *Chanel, Inc. v. Sunus Online Grp., LLC*, No. EDCV132194JGBDTBX, 2014 WL 12558780, at *3 (C.D. Cal. Jan. 15, 2014) (finding the balance of equities weighed in plaintiffs favor because it would not disrupt any lawful business, but instead only prevent future infringing conduct), and in design patent cases. *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307 RSWL FFMX, 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) (holding that defendants would face no hardship in permanently refraining from their infringing activities).

Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued because defendants have no right to engage in their present infringing activities.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**6. The Relief Sought Serves the Public Interest.**

"[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs*. Co., 809 F.3d at 647. The public also has a strong interest in protecting the rights of a trademark holder. *Go Daddy Operating Co., LLC v. Ghaznavi*, 2018 U.S. Dist. LEXIS 33002, at *39 (N.D. Cal. Feb. 28, 2018).

Furthermore, the public interest favors entry of a preliminary injunction to protect the consumer from being defrauded and misled by infringement. *Id.*

**C. Equitable Relief Sought is Appropriate.**

17 U.S.C §§ 502(a), 512(f), and 1203, authorize any courts having jurisdiction to grant temporary injunctions on such terms as it may deem reasonable to prevent or restrain further infringement of copyright or violations of other applicable rights.

**1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Copyrights is Appropriate.**

Plaintiff requests an order requiring defendants to immediately cease all uses of the plaintiff's works by the defendants listed on Schedule A to the complaint. This relief is necessary to stop the ongoing harm to plaintiff's copyrights and goodwill and to prevent defendants from continuing to place Facebook ads unlawfully using plaintiff's intellectual property rights.

Immediate injunctive relief in similar cases involving the unauthorized use of infringing intellectual property has been authorized[3].

**2. Entry of an Asset Freeze Order on Defendants' Facebook Advertising Accounts and Production of Information for those Accounts including Associated Accounts used to Fund Facebook Advertisements by Defendants During the Pendency of this Action is Appropriate.**

If the defendants listed on Schedule A to the complaint in this case are the same as or associated with the defendants in the SDFL Action, whose PayPal accounts were frozen there—and

[3] *See Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd.*, No. 18-CV-823-JLS (JLB), 2018 U.S. Dist. LEXIS 199020 (S.D. Cal. May 10, 2018) (Order Granting Ex Parte Application for Entry of Temporary Restraining Order); *Gucci Am., Inc. v. Los Altos Boots, Inc.*, No. CV 14-06680 BRO (AJWx), 2014 U.S. Dist. LEXIS 190411 (C.D. Cal. Aug. 27, 2014) (same); *Cisco Sys. v. Shenzhen Usource Tech. Co.*, No. 5:20-cv-04773-EJD, 2020 U.S. Dist. LEXIS 127509 (N.D. Cal. July 20, 2020) (same); *Feldenkrais Guild of N. Am. v. Wildman*, No. 18-cv-02340-YGR, 2018 U.S. Dist. LEXIS 73714 (N.D. Cal. May 1, 2018)(same).

this appears to be the case for many of the defendants—then defendants have earned millions of dollars operating their Facebook advertising and counterfeit goods scam. The defendants had no right to earn money from their scam Facebook advertisements using plaintiff's intellectual property. In order to obtain an accounting and disgorgement of the defendants' profits from their illegal activities, Betty's Best needs to obtain information from Facebook on the amount of money the defendants spent on advertising, and the details of that spend, as well as the source of the money used to fund their Facebook advertising. Plaintiff cannot obtain that information without a court order.

All of the defendants are located outside of the United States. Defendants will not cooperate with plaintiff to produce information regarding their Facebook ads unless this Court orders Meta to produce this information and also information concerning the accounts used to fund the defendants' advertising purchases transmitted through electronic funds transfer services, foreign banks and domestic banks, payment service providers and money transfer services that defendants use to transfer funds to Facebook.

To preserve the *status quo*, plaintiff seeks an order temporarily modifying control of and prohibiting defendants from transferring use or control of their Facebook advertising accounts and Facebook pages used and controlled by defendants. Plaintiff also seeks an order restraining defendants' assets in the hands of Meta, including specifically (1) funds paid to or due in the future to the defendants or Facebook for advertising within the control of Meta, and (2) funds in the possession of or transmitted through electronic funds transfer services, foreign banks and domestic banks, payment service providers and money transfer services that defendants use to transfer funds to their Facebook Advertising accounts.

Defendants are foreign nationals operating online residing in nations with weak legal regimes. Once they become aware of litigation against them, defendants will change the ownership or modify their Facebook pages, change payment accounts, redirect traffic to other accounts, and transfer assets and ownership of the Facebook advertising accounts, and thereby thwart the Court's ability to grant meaningful relief. (Rothman Decl. ¶¶ 10, 11, 15).

Here, an interim order prohibiting Defendants from transferring their Facebook pages, Facebook advertising accounts, and freezing their assets in those accounts preserves the *status quo*, and ensures that this Court, after fully hearing the merits of this action, will be able to afford plaintiff full relief. *See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc*., 80 F.3d 749 (2d Cir. 1996); *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to restrain all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case). *See also* cases cited at footnote 1 above.

Courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. *See Levi Strauss & Co.*, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); *Kemp v. Peterson*, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. See *F.T. Int'l Ltd v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). In light of the illicit nature of the infringement business and the ability of infringers to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving infringing

defendants. *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

In this case, Defendants' blatant violations of federal intellectual property laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as defendants' businesses are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte* relief, as defendants may easily secret or transfer their assets without the Court's or plaintiff's knowledge.

**D. An Order for Expedited Discovery is Appropriate.**

The Ninth Circuit instructed that "'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980). See also *Cottrell v. Unknown Corr. Officer*, No. 99-15567, 2000 U.S. App. LEXIS 21969, at *2-3 (9th Cir. Aug. 18, 2000) citing *Gillespie* and *Wakefield*.

Federal Rule of Civil Procedure 26(d) allows the district court to order discovery early in the case and Rule 45 allows service of a subpoena on a non-party. "Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify the unknown Does, unless it is clear that discovery would not uncover their identity, or his Complaint should be dismissed for other reasons." *Stevenson v. Beard*, 2017 U.S. Dist. LEXIS 166368, at *7 n.3 (S.D. Cal. Oct. 6, 2017). See also *Grizzle v. Cty. of San Diego*, 2017 U.S. Dist. LEXIS 121040, at *6 n.3 (S.D. Cal. July 31, 2017) (same).

Courts in infringement actions have applied "a three-factor test when considering motions for early discovery to locate certain defendants." *MGM Resorts Int'l v. Does*, 2017 U.S. Dist. LEXIS 138204, at *3-4 (D. Nev. Aug. 28, 2017). *First*, "the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court." *Id.* at 578. *Second*, the plaintiff "should identify all previous steps taken to locate the elusive defendant" to ensure that the plaintiff has made a good faith effort to identify and serve process on the defendant. *Id.* at 579. *Third*, the "plaintiff should establish to the

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss." *Id*. (citing *Gillespie*, 629 F.2d at 642); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-579 (N.D. Cal. 1999).

These factors support the court ordering that Plaintiff may serve limited third-party discovery to Meta to obtain the identifying information for the Facebook accounts of the Facebook Advertisers listed on Exhibit 1 to the Declaration of Sarah Owen.

**E. A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of plaintiff's evidence of infringement, plaintiff respectfully requests this Court require it to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV. CONCLUSION

In view of the foregoing, plaintiff respectfully requests this Court grant this motion and schedule a hearing on Plaintiff's motion for a preliminary injunction. Plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically or by remote video at the hearing on plaintiff's motion for a preliminary injunction, in accordance with the administrative orders of this Court. A proposed order has been submitted by counsel to chambers consistent with this motion.

DATED: September 19, 2023

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN (*Pro Hac Vice*)
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Betty's Best, Inc.*

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK