Joel B. Rothman (*Pro hac vice*)
Matthew L. Rollin (SBN 332631)
**SRIPLAW**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
matthew.rollin@sriplaw.com

Attorneys for Plaintiff
BETTY'S BEST, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BETTY'S BEST, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>THE FACEBOOK ADVERTISERS LISTED ON SCHEDULE A,<br><br>Defendants. | Case No.: 4:23-cv-04716-HSG<br><br>**DECLARATION OF SARAH M. OWEN IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, DISCOVERY ORDER, ASSET FREEZE ORDER AND PRELIMINARY INJUNCTION** |

I, Sarah M. Owen, declare and say:

1. I am over 18 years of age, and I have personal knowledge of the facts set forth herein.

2. I make this Declaration in support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Expedited Discovery Order, Order Restraining Transfer of Assets, and Preliminary Injunction (the "Application for TRO").

3. If called upon to do so, I could and would competently testify to the following facts set forth below.

//

//

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## BACKGROUND ON BETTY'S BEST, INC.

4. I am President and Chief Executive Officer of BETTY'S BEST, INC. ("Betty's Best" or "Plaintiff").

5. Betty's Best is a California Corporation with its principal place of business in Santa Ynez, California.

6. Betty's Best incorporated on January 1, 2016, and has been in continuous operation since then.

7. Betty's Best is the maker of the StripHair Gentle Groomer, a therapeutic brush for horses and dogs.

8. Betty's Best's products are sold through hundreds of authorized retailers and distributors in the United States and many countries like Canada, United Kingdom, Australia, South Africa, Japan, and numerous countries across Europe, listed on the StripHair.com Store Locator Map at https://striphair.com/pages/retail-store-locator, its own website https://striphair.com/collections/all-products, Amazon.com and other authorized retailers, these last in marketplaces other than Amazon.com and eBay.com.

9. Betty's Best owns the trademarks, copyrights and design patent described below that are the subject of this action in United States; as well registrations claiming protection for the product StripHair Gentle Groomer's design features in European Union and Australia, following the scope of its commercial activities extended outside the United States.

10. Betty's Best created and sells its products under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER.

11. Betty's Best offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

12. Like many other intellectual property rights owners, Betty's Best suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

13. Betty's Best is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

14. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Betty's Best expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

15. The recent explosion of infringement over the Internet has created an environment that requires companies like Betty's Best to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brands.

**BETTY'S BEST'S TRADEMARK RIGHTS**

16. Betty's Best created and sells unique patented grooming tools under the federally registered trademarks STRIPHAIR and THE GENTLE GROOMER (collectively the "Betty's Best Marks"), the first multi-purpose grooming tools of their kind, known as the "6-in-1 Shedding Grooming Massage brush" for horses and pets that can be used in 6 ways to shed, groom, shine, shampoo, scrape and massage. The StripHair Gentle Groomer is ideal for short-haired animals because it will not harm the skin, but it will also shed out a thick hairy coat in the spring-time molting season while providing a therapeutic massage and adding shine to the coat. It's safe to use everywhere, even the face and legs. The material used to make the StripHair Gentle Groomer is perfectly balanced to achieve outstanding durability, flexibility, cleanliness, sun protection, and just the perfect amount of grip.

17. Betty's Best is the owner of all rights in and to the Betty's Best Marks STRIPHAIR and THE GENTLE GROOMER (Standard Characters) for "grooming tools for pets, namely, combs and brushes; Currycombs" in International Class 21 shown in the table below.

| Mark | Reg. No. | IC | First Use | First Use in Commerce | Reg. Date | Exhibit |
|---|---|---|---|---|---|---|
| STRIPHAIR | 5072866 | 21 | 10/01/2014 | 12/16/2014 | 11/01/2016 | 1A |
| THE GENTLE GROOMER | 5328641 | 21 | 2015 | 2015 | 11/07/2017 | 1B |

18. The Betty's Best Marks are valid and registered on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1 to the Complaint in this action.

19. The STRIPHAIR and THE GENTLE GROOMER Marks are incontestable.

20. THE GENTLE GROOMER Mark uses the term "groomer", meaning a person who grooms (an animal, like a horse or dog), to personify the StripHair Gentle Groomer as a tool that acts gently on animals. This tool is not a bristle brush, not a shedding blade, and not a stiff water scraper, yet it can perform all of the same tasks.

21. The Betty's Best Marks are used in connection with the manufacture and distribution of Betty's Best's high-quality and unique patented grooming tools.

22. The Betty's Best Marks have been used in interstate commerce to identify and distinguish Betty's Best's high-quality and unique patented grooming tools for an extended period of time.

23. The Betty's Best Marks are a symbols of Betty's Best's quality goods, reputation and goodwill and has never been abandoned.

24. Betty's Best sells and fulfills orders shipping direct to consumers, retailers and distributors. Betty's Best establishs and maintains wholesale accounts to have better control over its brand.

25. Betty's Best sells its products via authorized retailers and distributors on the world wide web, where it promotes and sells genuine products with the Betty's Best Marks to consumers.

26. Online sales of products with Betty's Best Marks via the web represent a significant portion of Betty's Best's business.

27. The Betty's Best Marks are exclusive to Betty's Best and are displayed extensively on Plaintiff's products and in our marketing and promotional materials.

28. Betty's Best's products have been extensively promoted and advertised at great expense to Betty's Best.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

29. Betty's Best Marks are distinctive when applied to Betty's Best's products, signifying to the purchaser that the products come from Betty's Best and are manufactured to our quality standards. The authentic products are all made in United States.

30. Whether Betty's Best manufactures the products itself or licenses others to do so, it has ensured that products bearing its trademarks are manufactured to the highest quality standards.

31. The goodwill associated with the Betty's Best Marks is of incalculable and inestimable value.

32. Betty's Best has expended substantial time, money and other resources developing, advertising and otherwise promoting the Betty's Best Marks in connection with Betty's Best's products. Betty's Best's average marketing and promotional investments are over $225,000 per year.

33. Betty's Best has extensively used, advertised, and promoted the Betty's Best Marks in the United States in association with the sale of high-quality goods.

34. Betty's Best has spent substantial resources promoting the Betty's Best Marks and products bearing or sold under these Marks.

35. Sales of products bearing or sold under the Betty's Best Marks generated $1.6M (USD) in 2021.

36. As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the Betty's Best Marks as being high-quality and unique goods sponsored and approved by Plaintiff.

37. Betty's Best has received extensive editorial coverage and unsolicited press in various magazines, newspapers and publications throughout the world, as well awards, feature pieces and reviews of the products, among them:

- SPOGA HORSE Innovation Award at Cologne Germany 2018 International Trade Show
  - HORSES - Category Winner - Horses Product of the Year 2016 Europe
  - HORSES - Nominated - Horses Product of the Year 2018 – Europe
  - The CHRONICLE of the HORSE - USA - March 2018 - Rated top score 5/5 for hair-removal effectiveness and comfort for the horse.

- Equine Wellness Magazine article June 11, 2021, "Betty's Best is Changing the Way People Groom Their Horses", https://equinewellnessmagazine.com/bettys-best-groom-horses/
- "Review of the StripHair grooming tool" by Dr. Angelique Barbara, DVM with 2,903 views since Oct 2018, https://www.youtube.com/watch?v=xf_FyhNvhw0
- SmartPak retailer of StripHair - product review with 13,000 views since Dec 2018, https://www.youtube.com/watch?v=defzfvTrpD8
- "Striphair Gentle Groomer Review - Does It Really Work?" with 5,800 views since Feb 2019, https://www.youtube.com/watch?v=liTpxwl88_M
- "An Honest Review of the StripHair Gentle Groomer" article by the Economical Equestrian posted Mar 12, 2019, https://www.economicalequestrian.com/2019/03/12/an-honest-review-of-the-strip-hair-gentle-groomer/
- "The StripHair Gentle Groomer: Horse Grooming Tool" article in Sparkles and Sunshine blog post Sept 7, 2021, https://sparklesandsunshineblog.com/striphair-gentle-groomer-horse-grooming-tool/
- StripHair Facebook page with 89K Followers and Likes,
    - Product reviews March 2015 – current,
    - https://Facebook.com/StripHair
- Texas Horseman Magazine – March 15, 2020 - cover photo and featured article: "StripHair, The Gentle Groomer and the Woman Who's Changing How Horses are Groomed"; "Improving Circulation in Stall-Bound Horses".
- StripHair.com website product reviews since March 2015, https://striphair.com/pages/testimonials

38. Plaintiff has carefully monitored and policed the use of the Betty's Best Marks.

39. Genuine goods bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and retailers via the Internet.

40. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

41. Betty's Best's high-quality and unique patented grooming tools are marketed with posts and ads on Facebook from StripHair and Instagram accounts using our custom videos: https://facebook.com/striphair and https://instagram.com/striphair. Those products are also marketed with Google Ads.

42. Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

43. Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the Betty's Best Marks.

**BETTY'S BEST'S COPYRIGHT RIGHTS**

44. Betty's Best advertises, markets, promotes and sells its products under the Betty's Best Marks using photographs, videos, and through a website that are protected by copyright and registered with the Copyright Office (collectively the "Works").

45. Betty's Best's photographs are duly registered with the Register of Copyrights as visual materials as shown in the table below. True and correct copies of Copyrights Certificates of Registration and the photographs they apply to are attached hereto as Composite Exhibit 2 to the Complaint.

| Copyright Title and Description | Reg. No. | Reg. Date | Exhibit |
|---|---|---|---|
| StripHair Product Pictures 2020 (group of 10 photographs) | VA 2-299-367 | 05/12/2022 | 2A |
| StripHair Product Pictures 2019 (group of 7 photographs) | VA 2-300-902 | 05/19/2022 | 2B |
| StripHair Product Pictures 2018 (group of 2 photographs) | VA 2-304-928 | 06/03/2022 | 2C |
| StripHair Product Pictures 2021 (group of 8 photographs) | VA 2-304-931 | 06/03/2022 | 2D |

46. Plaintiff's videos are duly registered with the Register of Copyrights as entire motion pictures as shown in the table below. True and correct copies of the Certificates of Registration are attached as Composite Exhibit 3 to the Complaint.

| Copyright Title and Description | Reg. No. | Reg. Date | Exhibit |
|---|---|---|---|
| SH-Video-1 11.01.2019 (entire motion picture) | PAu 4-142-655 | 06/14/2022 | 3A |
| SH-Video-2 4-01-2021 (entire motion picture) | PAu 4-142-666 | 06/14/2022 | 3B |
| SH-Video-3 7.01.2021 (entire motion picture) | PAu 4-143-928 | 06/30/2022 | 3C |
| SH-Video-4 4.01.2018 (entire motion picture) | PAu 4-143-929 | 06/30/2022 | 3D |
| SH-Video-5 3.01.2019 (entire motion picture) | PAu 4-145-045 | 07/14/2022 | 3E |
| SH-Video-7 6.01.2020 (entire motion picture) | PAu 4-145-360 | 07/19/2022 | 3F |
| SH-Video-8 5.01.2021 (entire motion picture) | PAu 4-145-361 | 07/19/2022 | 3G |
| SH-Video-6 2.01.2019 (entire motion picture) | PAu 4-145-379 | 07/19/2022 | 3H |

47. Betty's Best's website content comprising photographs and text, titled "striphair.com website" is duly registered with the Register of Copyrights under the Reg. No. VA 2-271-013, effective from October 6, 2021. True and correct copy of Copyright Certificates of Registration are attached as Exhibit 4 to the Complaint.

48. The copyrighted photographs, videos, and the website content show Betty's Best's high-quality and unique patented grooming tools design features, its packaging, and its effective use from different perspectives in horses and pets.

49. Genuine grooming tools bearing or sold under the Betty's Best Marks are widely legitimately advertised and promoted by Betty's Best and its authorized distributors using Betty's Best's copyrighted photographs, videos, and through its website content.

50. Betty's Best has never granted authorization to anyone to advertise, market or promote unauthorized goods using Betty's Best's copyrighted photographs, videos, and its website content.

**BETTY'S BEST'S PATENT RIGHTS**

51. Betty's Best's grooming tools' design features are protected under a design patent and registered with the United Stated Patent and Trademark Office under the U.S. Patent No. D841,900 S titled "HORSE OR PET GROOMING TOOL". A true and correct copy of U.S. Design Patent Registration is attached hereto as Exhibit 5 to the Complaint (the "HOPGT Design Patent").

SRIPLAW
California ◆ Georgia ◆ Florida ◆ Tennessee ◆ New York

52. The HOPGT Design Patent relates to the ornamental design for a horse or pet grooming tool as shown and described through four figures corresponding and ordering in front, top, bottom and side views, in which the rear view of the design is identical to the front view and both side views are identical each other.

53. The HOPGT Design Patent was registered on February 26, 2019, has not expired and is valid.

54. Betty's Best marked its products with a Patent Notice.

55. Betty's Best has never granted authorization to anyone to import, make, use or sell unauthorized goods using the HOPGT Design Patent.

56. The overwhelming success of the unique patented grooming tools bearing or sold under the Betty's Best Marks has resulted in significant counterfeiting by individuals and entities who unlawfully use the trademarks and goodwill built by Betty's Best to sell cheap imitation counterfeits of Betty's Best's products.

**DEFENDANTS' FRAUDULENT FACEBOOK ADVERTISING**

57. Betty's Best has an anticounterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.

58. Starting in 2021, Betty's Best began finding counterfeiting of its intellectual property in advertising on Facebook with links to websites selling counterfeit goods. Betty's Best investigated the promotion and sale of counterfeit and infringing products by Defendants on Facebook advertisements. Betty's Best investigated, searched out, observed, and recorded this practice. Betty's Best observed that the Facebook Advertisers used sophisticated advertising practices and tools to generate multiple ads and multiple versions of ads using Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to imitate the StripHair brand and deceive consumers to purchase counterfeit products from ad-linked website pages.

59. Betty's Best observed counterfeit sellers using altered versions of Betty's Best photographs and product videos in paid sponsored advertisements within Facebook accounts with ad links directly to associated website pages with active shopping buttons that also showed uses of the

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Betty's Best Marks, the copyrighted Works and the HOPGT Design Patent. For over twenty-two months, Betty's Best searched Facebook Ads, made publicly available in the online Ads Library, for specific terms that are common to Betty's Best and used also by counterfeiters. We documented this activity and it is set forth in Schedule "A" to the Complaint. To date, Betty's Best has submitted over 3,512 IP Infringement Reports to Facebook for the fraudulent Facebook ads in an attempt to stop Facebook Ad buyers from using Facebook Ads to promote the sale of counterfeit Betty's Best products.

60. Counterfeiting was found in advertising on Facebook that linked to websites online. Counterfeiters are using sophisticated advertising practices and tools to generate advertising using the copyrighted Works, and the HOPGT Design Patent to imitate the StripHair brand and deceive the consumer to purchase counterfeit products from ad-linked website pages. All of the Facebook pages and Facebook Ads are owned, operated or administered by the defendants identified on Schedule "A" to the Complaint who are located in China and are copying the copyrighted Works and the HOPGT Design Patent to advertise and promote counterfeit products.

61. Plaintiff documented this activity in Schedule "A" to the Complaint that lists all the scam and fraudulent Facebook advertising plaintiff discovered. Concerning the sales and offers to sell of counterfeit goods, Plaintiff sued the defendants responsible in a separate complaint in the Southern District of Florida that named the owners and operators of websites and marketplace storefronts that sell and promote the sale of counterfeit goods, including websites that the defendants' Facebook advertisements link to. *Betty's Best, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A*, Case No. 1:23-cv-22322-KMW (the "SDFL Action').

62. After plaintiff obtained a TRO in the SDFL Action, plaintiff analyzed some initial information received in response to the TRO and determined that this further action addressing the illegal activity engaged in by defendants on Facebook was needed. Specifically, plaintiff needs to stop the use of its intellectual property on Facebook, determine the identities of the Facebook advertisers responsible, and preserve its remedy for infringement to the extent the Facebook advertisers are different from the counterfeiters sued in the SDFL Action.

63. Plaintiff does not know if the defendants here who paid for and sponsored advertising on Facebook directing purchasers to the scam websites are the same individuals or entities operating the scam websites. Plaintiff does not know who is advertising on Facebook, only Facebook knows. Only by obtaining the identifying information for defendants from Facebook and comparing it to the information obtained in the SDFL Action can plaintiff determine who bears the full scope of responsibility for the illegal acts committed against Betty's Best.

64. Since 2021, I or someone under my supervision has searched out, observed, and recorded this new practice engaged in by counterfeiters. The counterfeiters use software to create advertising that they place on Facebook with links to third-party websites that direct potential purchasers to buy counterfeit products. Counterfeit sellers use software to alter Betty's Best photographs in creating paid sponsored advertisements within a Facebook account having ad links directly to associated website pages with active shopping buttons revealing more uses of Betty's Best Marks, the copyrighted Works and the HOPGT Design Patent. When a Facebook Ad is created, it is given a unique Facebook Ad ID number. Betty's Best has identified and tracked these Facebook Ads in the online Facebook Ads Library[1].

65. For the past twenty-two months, Betty's Best employees or persons acting under their direction have searched many of the Facebook Ads, made publicly available in the online Ads Library, for specific terms that are common to Betty's Best and used also by counterfeiters. When a Facebook Ad is discovered that uses Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, Betty's Best submitted IP infringement reports for each advertisement to Facebook. To date, Betty's Best has submitted over 3,512 IP Infringement Reports to Facebook.

66. Despite Betty's Best's submission of over 3,512 IP infringement reports to Facebook, to date Facebook has not taken any action to stop Facebook Ad buyers from using Facebook Ads to promote the sale of counterfeit Betty's Best products. Many of the Facebook pages that the Facebook Ads linked to are still up and have not been removed despite our reports. Many Facebook pages go down for a short time only to become active a few days later. Many pages have been

---

[1] See https://www.facebook.com/ads/library.

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

reported four to six times but have not been removed. All these pages contain counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent, or they link to other websites that contain counterfeits of the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. All of these Facebook Ads, Facebook Pages, and the websites they link to function in order to sell counterfeit Betty's Best products to unwitting consumers.

67. Attached hereto are the following exhibits:

| | |
|---|---|
| Exhibit 1 | Discrete list of Facebook Advertisers shown on Schedule A to the Complaint that Plaintiff seeks identification of a TRO/preliminary injunction against further scam advertising using Plaintiff's intellectual property, and an asset restraint |
| Exhibit 2 | List of Facebook Advertisers shown on Schedule A who match the defendants in the SDFL Action |
| Exhibit 3 | List of Facebook Advertisers shown on Schedule A who do not match the defendants in the SDFL Action based on the information currently in plaintiff's possession. |
| Exhibit 4 | Screenshots showing the Defendants' Uses of Plaintiff's Copyrights, Design Patents, and Trademark Infringement/False Advertising |

68. All the defendants have Facebook pages. All the defendants place Facebook advertisements. All the defendants used plaintiff's copyrighted works in their advertising as shown in Exhibit 4 attached hereto. All the Facebook advertisements infringed plaintiff's intellectual property rights. All the defendants are believed to be located in China. All the defendants link their Facebook advertisements to websites that sell counterfeit goods. It appears that many of the Facebook pages and Facebook Ads listed in Schedule A to the Complaint are owned, operated or administered by defendants named in the SDFL Action.

**DEFENDANTS' COUNTERFEITING AND INFRINGING ACTIVITIES CAUSE IRREPARABLE HARM TO PLAINTIFF IN THE FORM OF PRICE EROSION, DAMAGE TO REPUTATION, AND LOSS OF GOOD WILL THAT ARE NOT COMPENSABLE BY DAMAGES ALONE**

69. As the illegal marketplace for Betty's Best's products grows on the Internet, the legitimate marketplace for authentic Betty's Best's products shrinks.

70. Monetary damages cannot adequately compensate Betty's Best for ongoing infringement because monetary damages fail to address the loss of control and damage to Betty's Best's reputation and goodwill.

71. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement.

72. Betty's Best's goodwill and reputation are irreparably damaged when the Betty's Best Marks are used to advertise goods not authorized, produced or manufactured by Plaintiff.

73. Moreover, brand confidence is damaged, which can result in loss of future sales and market share.

74. The extent of harm to Betty's Best's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

75. Betty's Best is further irreparably harmed by the unauthorized use of the Betty's Best Marks because counterfeiters take away our ability to control the nature and quality of Counterfeit Products.

76. Loss of quality control over goods bearing or sold under the Betty's Best Marks and, in turn, loss of control over our reputation, is neither calculable nor precisely compensable.

77. The advertisement and sale of counterfeit and infringing products bearing or sold under the Betty's Best Marks is likely causing and will continue to cause consumer confusion that weakens the Betty's Best Marks' brand recognition and reputation.

78. Consumers who mistakenly believe that the Counterfeit Products he or she has purchased originated from Betty's Best will come to believe that Plaintiff offers low quality products.

79. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Betty's Best products, resulting in a loss or undermining of Plaintiff's reputation and goodwill.

80. Indeed, there is damage to our reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit because prospective consumers who see inferior

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Counterfeit Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Betty's Best's products. Such post-sale confusion results in further damage Betty's Best's reputation and correlates to a loss of unquantifiable future sales.

81. Betty's Best is further irreparably damaged due to a loss of exclusivity. Betty's Best's extensive marketing and innovative designs are aimed at growing and sustaining sales. The Betty's Best Marks are distinctive and signify to consumers that the products exclusively originate from Betty's Best. When counterfeiters use the Betty's Best Marks on goods without authorization, the exclusivity of the Betty's Best's products, as well as Betty's Best's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

82. Betty's Best will suffer immediate and irreparable injury, loss or damage if defendants are allowed to continue to run ads using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

83. Defendants have advertised and promoted their infringing products in competition directly with Plaintiff's genuine products.

84. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent.

85. Plaintiff has suffered price erosion and deterioration as a result of Defendants' infringement. Since Betty's Best started establishing wholesale accounts and sales in 2015, it has enforced a minimum advertised pricing (MAP) policy with US retailers, and adhered to the MAP policy on StripHair.com and Amazon.com. Meanwhile, the Facebook Advertisers listed on Schedule "A" to the Complaint in this case consistently promoted the sale of counterfeit products at an average price 50% lower than our genuine products, which undercut Betty's Best's MAP price considerably. This forces Betty's Best to consider lowering the MAP price in an effort to compete with the counterfeiters' prices. Not lowering the price will cause us to lose further business; lowering the price will either eliminate or significantly reduce our margin and the margin earned by our distributors and retailers.

86. The StripHair Gentle Groomer is our flagship product, and sales of our product line of supplemental products have and will continue to drop along with StripHair sales.

87. Defendants promote and advertise their counterfeit products for much less than Plaintiff.

88. Plaintiff has continued to have difficulty selling its authentic products online because of the price pressure asserted by the Defendants' advertising of counterfeit and infringing products.

89. Plaintiff has suffered extreme pressure for further price erosion.

90. With the limited sales data made available by e-commerce websites, Plaintiff was still able to determine that more than 64,584 counterfeit products were sold in the past year using the Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent. Betty's Best sales revenue dropped 75% in the last quarter of 2021. It is estimated that between 2021 and 2022, lost sales in USD substantially exceeded $19,000,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 18, 2023.

Sarah M Owen

Verified by signNow 09/18/2023 22:22:21 UTC 008b8d453e2140c2a30b

SARAH M. OWEN
President and Chief Executive Officer

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK