Joel B. Rothman (Pro hac vice)
Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiff
Betty's Best, Inc.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BETTY'S BEST, INC., Plaintiff, v. THE FACEBOOK ADVERTISERS LISTED ON SCHEDULE A, Defendants. | CASE NO.: 4:23-cv-04716-JSC **SUPPLEMENT TO EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET FREEZE ORDER, EXPEDITED DISCOVERY ORDER, AND PRELIMINARY INJUNCTION** |

Plaintiff BETTY'S BEST, INC. ("Betty's Best") by and through undersigned counsel, submits this supplement to the Court on the plaintiff's application for a temporary restraining order. This supplement clarifies the scope of the TRO Betty's Best is seeking and provides further legal authority therefor. This supplement follows discussions that took place on Friday, September 22, 2023 between counsel for Betty's Best and a) counsel for Meta Platforms, Inc., the owner of Facebook; and b) counsel for certain of the defendants in this case who are also defendants in *Betty's Best, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A*, Case No. 1:23-cv-22322-KMW (the "SDFL Action').

**A. The Facebook Advertisers that Plaintiff Seeks Entry of a TRO Against:**

1. Schedule "A" to the Complaint contains a long list of thousands of scam Facebook advertisements placed on Facebook by Facebook Advertisers located in China and are using and

abusing Betty's Best Marks, the copyrighted Works, and the HOPGT Design Patent to sell counterfeit products.

2. Exhibit 1 to the Declaration of Sarah Owen provided a discrete list of those same Advertisers that Plaintiff seeks entry of a TRO against. **The number of Facebook Advertisers at issue is 592.** Those Facebook Advertisers listed in Exhibit 1 to the Declaration of Sarah Owen are reproduced here as Exhibit 1 to this Supplement for ease of reference. **The Facebook Advertisers listed in Exhibit 1 reproduced here are the 592 defendants in this action.**

## B. The Relief Sought under Rule 65 and Rule 26(d) from Meta Concerning the Facebook Advertisers:

3. Plaintiff seeks the following relief[1] from or concerning Meta:

a. An order pursuant to Rule 26(d) that Facebook produce on an expedited basis information sufficient to show the identities of the 592 Facebook advertisers (i.e. their names, email addresses, physical addresses, and telephone numbers) listed in Exhibit 1 reproduced here, or in the alternative, leave to serve a subpoena on Meta to obtain that information on an expedited basis;

b. An asset freeze order pursuant to Rule 65 that Meta and its subsidiaries freeze defendants' assets held in their Facebook Advertising accounts during the pendency of this case, and require Meta provide plaintiff on an expedited basis information concerning the amount of funds in those accounts and the PayPal accounts defendants use to fund those accounts, or in the alternative, grant plaintiff leave to serve a subpoena to Meta to obtain the information on an expedited basis.

4. The identities of the Facebook Advertisers are Unknown to Plaintiff. Plaintiff only knows the made-up usernames shown on Exhibit 1 that the defendants use for their Facebook pages and Facebook advertisements. Plaintiff needs to know the real identities of these Facebook

[1] Plaintiff is not now seeking an order requiring Meta or Facebook to impose content restrictions on defendants. To the extent that the application for a TRO sought or requested that this Court order Meta or Facebook to impose restrictions on defendants from placing advertising on Facebook, plaintiff withdraws that request. Plaintiff agrees that at this stage Facebook should not be required to police the content of defendants' advertising or Facebook pages in advance, and that relief of that nature is inherently problematic.



SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Advertisers to name them in this lawsuit and continue plaintiff's investigation of the infringement the defendants committed and are committing. The Facebook Advertisers are ascertainable, but Plaintiff does not know the names, email addresses, physical addresses, or telephone numbers for the defendants.

5. Plaintiff seeks early discovery pursuant to Rule 26(d) to obtain the identities of the Facebook Advertisers.[2] While this information would normally be obtained by subpoena pursuant to Rule 45 later in the case, in this case plaintiff has served Meta Platforms, Inc., the owner of Facebook, with this motion and counsel for Meta has indicated that its client is willing to cooperate and appear before the Court in this matter.

6. Plaintiff has a pressing need for this information and should be entitled to obtain it on an expedited basis. See *Stevenson v. Beard*, 2017 U.S. Dist. LEXIS 166368, at *7 n.3 (S.D. Cal. Oct. 6, 2017) ("Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify the unknown Does, unless it is clear that discovery would not uncover their identity, or his Complaint should be dismissed for other reasons."); *Grizzle v. Cty. of San Diego*, 2017 U.S. Dist. LEXIS 121040, at *6 n.3 (S.D. Cal. July 31, 2017) (same).

7. Plaintiff satisfies three-factor test applied in the Ninth Circuit to obtain this information. See *MGM Resorts Int'l v. Does*, 2017 U.S. Dist. LEXIS 138204, at *3-4 (D. Nev. Aug. 28, 2017). Plaintiff has identified the missing parties with specificity. *Id*. at 578. Plaintiff has explained all previous steps taken to locate the elusive defendants, including by filing the SDFL Action, yet plaintiff still does not know the identities of the defendants here despite the appearance of counsel in the SDFL Action and in this action who represent overlapping defendants. *Id*. at 579. Finally, plaintiff's suit could withstand a motion to dismiss. *Id*. citing *Gillespie*, 629 F.2d at 642; *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-579 (N.D. Cal. 1999).

8. Meta may argue that plaintiff should serve a subpoena and wait for Facebook's compliance. However, a subpoena should not be necessary since the defendants have already been

[2] The Ninth Circuit instructed that "'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642-43 (9th Cir. 1980). See also *Cottrell v. Unknown Corr. Officer*, No. 99-15567, 2000 U.S. App. LEXIS 21969, at *2-3 (9th Cir. Aug. 18, 2000) citing *Gillespie* and *Wakefield*.

identified to Facebook in a way that is sufficient for Facebook to easily and quickly provide plaintiff with the defendants' identities. Furthermore, the defendants are violating the terms of their agreements with Meta not to use the Facebook platform for illegal and infringing activity.[3] (See ECF 16-19). It is in Facebook's interest to permit plaintiff to enforce its rights against rogue actors who violate the rules on Facebook.

9. For over two years—since August of 2021—Betty's Best has struggled in vain to obtain Facebook's cooperation to stop the defendants from using and abusing plaintiff's intellectual property rights in Facebook ads. In further support of the TRO, plaintiff is filing the declaration of Sunday Jacobs, Betty's Best's Chief Operating Officer who attaches the following exhibits in support of the TRO:

a. Emails exchanged with Facebook's intellectual property team and advertising team beginning in early September 2021 detailing plaintiff's serious concerns about the scam Facebook advertising activity by the defendants (Jacobs Decl. Ex. 1);

b. Over 530 emails from Facebook from August 2021 to August 2023 confirming reports made to Facebook's reporting system by Betty's Best for intellectual property infringement in Facebook ads by the Facebook advertisers organized by date (Jacobs Decl. Ex. 2)

10. The Jacobs Declaration and exhibits were provided to counsel for Facebook in connection with the filing of this supplement. In addition, a native version of Exhibit 1 in Excel

---

[3] Meta maintains a set of Advertising Standards for Facebook advertisements. (ECF 16-19). These standards are based on certain Meta "core values" and principles including "PROTECTING PEOPLE FROM UNSAFE AND DISCRIMINATORY PRACTICES" wherein Meta says "Our policies require all advertisers to comply with the laws in their jurisdiction, not engage in discriminatory practices, and not sell illegal or unsafe substances." (Id.)

Meta prohibits "Third-Party Infringement" and says:

> Ads may not contain content that infringes upon or violates the intellectual property rights of any third party, including copyright, trademark or other legal rights. This includes, but is not limited to, the promotion or sale of counterfeit goods, such as products that copy the trademark (name or logo) and/or distinctive features of another company's products to imitate a genuine product.

(Id.)

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

format to the declaration of Sarah Owen was provided to Facebook's counsel on September 22, 2023. That Excel format document contains all the Facebook advertisement violation reports with Facebook page links, Facebook ad ID numbers, Facebook ad library links, and all other information necessary for Facebook to identify the allegations made by plaintiff against the specific advertisers and provide the information plaintiff is requesting here.

11. The scope of this Court's authority to afford relief pursuant to Rule 65 extends to third-parties such as Meta who has been provided with notice and is subject to the Court's jurisdiction. This Court has in personam jurisdiction over Meta because it is located in this district, has received notice, and has indicated it will appear by counsel before this Court. Meta is not an unrelated third-party. Meta owns and controls Facebook, the platform the defendants use to commit their infringement and counterfeiting. Meta sells advertising to the defendants and earns money from that advertising. Meta is an appropriate party that can be enjoined and restrained under Rule 65.

12. Once personal jurisdiction over a party is established, the district court has authority to order the party to "freeze" property under its control pending trial, whether the property be within or without the United States. *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965). Where, as here, a plaintiff seeks the equitable remedy of an accounting of profits, the district court has the inherent equitable authority to freeze the defendant's assets if the requirements for a preliminary injunction are otherwise satisfied. *Gucci Am. v. Bank of China*, 768 F.3d 122, 130 (2d Cir. 2014) (entering an asset freeze is within the court's authority whether the property be within or outside the United States).

13. Courts typically enter asset restraint injunctions where there is a risk the defendant may quickly and easily dissipate or place the assets beyond the reach of the court, thwarting the plaintiff's ability to obtain meaningful relief. See, e.g., *Jacobo v. Doe*, No. 1:22-cv-00672-DAD-BAK (BAM), 2022 U.S. Dist. LEXIS 101504, at *15 (E.D. Cal. June 7, 2022) (ordering an asset freeze and noting the risk of anonymous and speedy asset dissipation due to the inherently fraudulent nature of cryptocurrency transfers); *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 8:22-cv-00462-SB-DFM, 2022 U.S. Dist. LEXIS 66056, at *11 (C.D. Cal. Mar. 30, 2022) (ordering freeze of defendant's assets including bank and payment system account funds used in connection with the fraudulent activity because of the likelihood that the defendant will hide or move the funds out of the court's reach); *Leading Edge Mktg., Inc. v. Individuals, P'ship*, No. 23-cv-21333-BLOOM/Otazo-Reyes, 2023 U.S. Dist. LEXIS 92300, at *6 (S.D. Fla. Apr. 12, 2023) (finding good cause to believe

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

that counterfeiting defendants can quickly and easily transfer away assets held with third-party retailers and including a freeze of those assets in the temporary restraining order entered); *Zuru Inc. v. Individuals, P'ship*, No. 1:23-cv-22217-WILLIAMS/REID, 2023 U.S. Dist. LEXIS 130178, at *7 (S.D. Fla. July 26, 2023) (adopted and affirmed by, and injunction granted at *Zuru Inc. v. Individuals, P'ship*, 2023 U.S. Dist. LEXIS 135596 (S.D. Fla., Aug. 3, 2023)) (recommending restraint of inventory and financial assets "in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any defendant, including, but not limited to, any assets held by or on behalf of any defendant" . . .).

14. Additional support is provided by the SDFL Action. **The court in the SDFL Action already made the same determination plaintiff seeks here.** Filed at ECF 16-8 and 16-7 respectively are the Report and Recommendation and Order granting the TRO entered in the SDFL Action that ordered the assets of many of the same defendants held by online marketplaces and payment processors such as PayPal frozen pending a hearing on plaintiff's motion for preliminary injunction. Filed at ECF 16-11 and 16-12 respectively are the declarations of Sarah Owen and Joel Rothman in support of the entry of the TRO in the SDFL Action. The evidence submitted here in support of the TRO relief requested is found at ECF 16-1 through 16-6 and is as strong as that submitted in the SDFL Action and demonstrates a likelihood of success on the merits.

15. There is nothing unusual about applying TRO restraints against non-parties like Meta. By its terms, relief under Rule 65 applies not only to the parties, but also to "those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). The Supreme Court has explained that the last clause of Rule 65(d) "is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).

16. Third parties who are subject to the court's jurisdiction and receive notice are "already bound" from the time the original injunction is issued. *Lado v. Gaynor*, No. 20-56287, 2021 U.S. App. LEXIS 1133, at *6 n.3 (9th Cir. Jan. 14, 2021). Furthermore, it is well-established that a third party on notice cannot aid or abet an enjoined party's violation of an injunction. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014); *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 134 (2d Cir. 2021); *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 674 (3d Cir. 1999).

> The scope of an injunction has no rigid perimeter, and a court may modify an injunction to adapt to changed circumstances. *United States v. Swift & Co.*, 286 U.S. 106, 114-115 (1932). Even absent such modification, however, a nonparty's actions may render it susceptible to the injunction's effect…[T]he reach of an injunction will accord with its purpose(s), subject to the limitations of due process. A court must consider the extent of the alleged "active concert or participation" of third parties with those named in the injunction in determining whether the injunction's prohibitions shall apply to those third parties.

*Rockwell Graphic Sys. v. DEV Indus.*, 91 F.3d 914, 919-20 (7th Cir. 1996).

17. Application of Rule 65 relief against non-parties on notice subject to the court's jurisdiction and consistent with due process has become commonplace in online counterfeiting and infringement cases. See, e.g., *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP (MANx), 2014 U.S. Dist. LEXIS 127250, at *7-8 (C.D. Cal. Sep. 10, 2014) (determining that non-party retailers such as Amazon.com were within the scope of the district court's injunction because "Plaintiff's Lanham Act claim is likely meritorious, and therefore justifies the extraordinary measure of preliminary injunctive relief in the first place, [and therefore] it is clear that Plaintiff may aggressively assert the injunction's protection in the marketplace in order not to be subject to unfair competition.") See also cases cited in paragraph 13 above where TROs were entered and applied against third party online marketplaces.

## CONCLUSION

This court should grant the motion. Concurrently a revised proposed TRO will be submitted by counsel to chambers consistent with this supplement.

DATED: September 24, 2023

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Betty's Best, Inc.*

SRIPLAW
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK