UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY'S BEST, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>THE FACEBOOK ADVERTISERS LISTED ON SCHEDULE A, et al.,<br><br>    Defendants. | Case No.  23-cv-04716-JSC<br><br>**ORDER RE: MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR STAY**<br><br>Re: Dkt. No. 59 |

Plaintiff Betty's Best, Inc., sues 592 Facebook Advertisers for infringement of Plaintiff's intellectual property.  (Dkt. No. 1.)[1]  Before the Court is Certain Defendants' motion to dismiss or, in the alternative, motion for stay.  (Dkt. No. 59.)  Having carefully considered the briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the March 21, 2024 video hearing, and GRANTS Certain Defendants' motion to stay the action in its entirety.  Because the first-filed Florida Action involves substantially similar parties and issues, a stay of this case will promote judicial efficiency and avoid the possibility of conflicting judgments.

**DISCUSSION**

85 Certain Defendants request the Court dismiss or stay this action as to all Defendants on the grounds (1) the complaint is duplicative of *Betty's Best, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A*, Docket No. 1:23-cv-22322 (S.D. Fla.) (Florida Action), (2) this action is not the first filed action, and (3) this action is barred by the anti-claim-splitting doctrine.  (Dkt. No. 59 at 6.)  In the alternative, Certain Defendants request the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  Court stay this action through its inherent authority.

2  **I.   First-to-File Rule**

3  "The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013) ("A federal district court has discretion to dismiss, stay, or transfer a case to another district court under the first-to-file rule."). "The most basic principle of the first-to-file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). However, "[t]he first-to-file rule is intended to serve the purpose of promoting efficiency well and should not be disregarded lightly." *Kohn L. Grp., Inc.*, 787 F.3d at 1239. "The first-to-file rule may be applied when a complaint involving the same parties and issues has already been filed in another district. Thus, a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id*. at 1240.

It is undisputed the Florida Action predated this action and involves the same issues. The first and third factors thus weigh in favor of applying the first-to-file rule. Plaintiff only disputes the similarity of the parties, arguing it is impossible to determine whether the parties in the Florida Action are the same as 85 Certain Defendants because the actual identities of 85 Certain Defendants are unknown. (Dkt. No. 63 at 4.) But Plaintiff filed a list of Facebook Advertisers named in this action that correspond to the websites named in the Florida Action. (Dkt. No. 16-3 ("List of Facebook Advertisers Who Match Defendants in the [Florida] Action".) So, it is possible.

"[T]he first-to-file rule does not require exact identity of the parties," it only requires substantial similarity of parties. *Kohn L. Grp., Inc.*, 787 F.3d at 1240. In this case and the Florida Action, the plaintiff is the same. At least 54 of the 85 Certain Defendants are defendants in the Florida Action; it is unknown whether 31 of the 85 Certain Defendants are named in the Florida Action. (Dkt. No. 16-3.) Defendants in this action are identified by Facebook Advertiser accounts, whereas defendants in the Florida Action are identified by their websites. In the Florida

1   Action, Plaintiff sues "owners and operators of websites and marketplace storefronts that sell and
2   promote the sale of counterfeit goods, including websites that the defendants' Facebook
3   advertisements link to." (Dkt. No. 16-1 ¶ 61.) In this action, Plaintiff sues Facebook Advertisers
4   for "scam and fraudulent Facebook advertising" that linked to websites named in the Florida
5   Action. (*Id.* ¶¶ 60-63.) In both actions, Plaintiff sues e-commerce entities for infringing the same
6   intellectual property. Indeed, Plaintiff's original complaint in the Florida Action alleged claims
7   against Facebook Advertisers that Plaintiff removed from its First Amended Complaint:

> In the original complaint filed in [the Florida Action], plaintiff set forth allegations concerning counterfeiting in advertising on social media, and specifically Facebook, that linked to sellers on online marketplaces. Plaintiff has deleted those allegations from this amended complaint. Plaintiff has filed a separate action in the Northern District of California where Meta Platforms, Inc., the owner and operator of Facebook, is located, Case No. 4:23-cv-04716-JSC, and plaintiff's claims concerning infringing activity on Facebook are alleged in that separate action. Plaintiff files this amended complaint to make clear that plaintiff's claims regarding intellectual property infringement in Facebook advertising are not alleged in this action.

14  Florida Action at Dkt. No. 84 ¶ 135. The only distinction between the two cases is the Florida
15  Action involves defendant websites offering counterfeit goods, and this action involves defendant
16  advertisers who posted counterfeit advertisements linking to the websites named in the Florida
17  Action offering counterfeit goods. (Dkt. No. 16-1 ¶¶ 58-61.) Plaintiff fails to provide any
18  argument as to why this distinction is meaningful, and otherwise fails to explain why the parties in
19  this action are not substantially similar to the parties in the Florida Action.
20         Since the parties in this action are substantially similar to the parties in the Florida Action,
21  as roughly 64% of the 85 Certain Defendants are sued in the Florida Action, all three factors favor
22  application of the first-to-file rule. "When found to be applicable, the rule gives courts the power
23  to transfer, stay, or dismiss the case." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d
24  1289, 1293 (N.D. Cal. 2013) (citing *Alltrade, Inc.*, 946 F.2d at 623). "[W]here the first-filed
25  action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than
26  dismissed." *Alltrade, Inc.*, 946 F.2d at 629. In the Florida Action, 54 of the 85 Certain
27  Defendants filed a motion to dismiss for lack of personal jurisdiction and insufficient service of
28  process, which is currently pending. Florida Action at Dkt. No. 133. If the Court were to dismiss

this action, and then the Florida action is dismissed, there might be statute of limitations issues. So, a stay—rather than dismissal—is appropriate in this second-filed case.

A stay of this case will promote judicial efficiency and avoid the possibility of conflicting judgments. Because of the overlapping claims and parties, discovery will likely be duplicative. This case is in its early stages, as Plaintiff claims to be unable to identify any Defendant beyond a Facebook Advertiser account or email address and thus cannot serve Defendants through regular channels. Pursuant to the Court's September 2023 order, Meta produced to Plaintiff the identifying information of the 592 Facebook Advertisers, including their names, email addresses, telephone numbers, and physical addresses if available. (Dkt. Nos. 40, 41.) Plaintiff claims Meta's response to Plaintiff's subpoena produced account numbers and email addresses but no names of individuals or corporations to aid in identification or service. Now, Plaintiff's only articulated plan to identify Certain Defendants is to "[l]et the 85 Defendants come forward and identify themselves." (Dkt. No. 63 at 4.) In contrast, Plaintiff has served defendants in the Florida Action and the parties are in discovery. *See* Florida Action at Dkt. No. 343 (denying Plaintiff's motion for leave to file second amended complaint because "the parties appear to be engaging in extensive discovery."). Additionally, Plaintiff does not argue a stay poses any prejudice. Because the first-filed Florida Action involves substantially similar parties and issues, a stay "is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *Kohn L. Grp., Inc.*, 787 F.3d at 1240.

Finally, without citing any authority, Plaintiff contends Certain Defendants cannot move to stay the action because they have not yet been served. But defendants can move to dismiss a case for failure to serve. Fed. R. Civ. P. 4(m); *see Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (remanding the district court's denial of the defendant's motion dismiss with instructions to dismiss the action for failure to comply with Rule 4(m)'s service requirements). Plaintiff posits no reason why a defendant must wait to be served before moving to stay under the first-to-file rule.

## CONCLUSION

Accordingly, Certain Defendants' motion to stay the case in its entirety is GRANTED pending resolution of the Florida Action as to Certain Defendants. The parties shall jointly file a

4

status report on or before September 19, 2024 updating the Court on the status of the Florida action.  Certain Defendants shall take the lead in ensuring the status update is prepared and filed. If Plaintiff believes circumstances warrant lifting the stay in this action prior to the September date, it may move the Court do so.

This Order disposes of Docket No. 59.

**IT IS SO ORDERED.**

Dated: March 20, 2024

JACQUELINE SCOTT CORLEY
United States District Judge